## 8382

### GOOD v. JARRARD.

REAL PROPERTY.—UNDER AN EXECUTORY CONTRACT for the sale of a house and lot by which the sale was to be completed on a future day by payment of the purchase money and delivery of an unencumbered title, the property being encumbered by mortgage, the vendor being in possession by tenant under an unexpired lease, the loss by fire of

the house before the date for the execution of the contract falls on the vendor, he having an insurable interest in the property.

*Paine* v. *Miller,* 6 Ves. 349, *explained.*

MESSRS. JUSTICES WOODS *and* WATTS *dissent.*

Before GAGE, J., Greenville, May, 1911. Reversed.

Action by Nannie J. Good against J. C. Jarrard. Defendant appeals.

*Messrs. Haynesworth & Haynesworth,* for appellant, cite: 9 Har. L. R. 118; 11 Ency. 180; 651 Lim. 8; 78 Am. St. R. 207; 98 Ga. 730; 22 Gratt. 82; 60 Pac. 1104; 4 S. W. 225; 6 Ky. 51; 170 Pac. 155; 107 Mass. 514.

*Messrs. McCullough, Martin & Blythe,* contra, cite: 29 Ency. 712; 1 Pom. Eq. Jur., sec. 367; 96 S. W. 731; 103 N. W. 212; 71 At. 226; 106 Pac. 445; 64 S. E. 923; 77 At. 81; 96 A. D. 582; 1 S. W. 199; 111 N. W. 623; 55 S. E. 844; 61 Pac. 926; 99 S. W. 1095; 59 At. 242; 20 So. 419; 21 S. C. 403; 5 S. C. 463; 36 Cyc. 638; 33 L. R. A. 77.

December 2, 1912. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action for specific performance of the following contract, into which the plaintiff and defendant entered, at the time therein mentioned:

"This agreement, made this 23d day of July, 1910, between J. C. Jarrard, of the first part, hereinafter designated as 'purchaser,' and W. S. Good and Nannie J. Good, of the second part, hereinafter designated as the 'owners:'

"Witnesseth: The purchaser has paid to the owners, ten ($10) dollars as part payment of the storehouse and lot in Marietta, in said county, the purchase price of

which is to be one thousand one hundred ($1,100) dollars, one half to be paid on December 1st, 1910, and the balance on December 1st, 1911, with interest from date of the deed at eight per cent. No deed is to be made until the first one-half portion of the purchase price is paid, when the purchaser is to deliver to the owners, a first mortgage for the unpaid balance bearing interest as aforesaid.` Payment is to be made to William G. Sirrine or to H. P. McGee.

"The said purchaser agrees to buy and pay for the land, at the price and time mentioned, and the owners agree on their part, that when one-half of the purchase price is paid to make unto the purchaser, a good and sufficient fee simple deed, with general warranty and free from all encumbrances."

Then follows a description of the premises.

The provision in the agreement, that payment was to be made to William G. Sirrine or to H. P. McGee, was inserted for the purpose of requiring payment of certain mortgages, out of the purchase money, that encumbered the property, at the time of the agreement, and were still subsisting liens, when the storehouse was destroyed by fire, on the 31st of August, 1910.

The following is taken from the testimony, which the plaintiff gave, when examined as a witness: "Had you made arrangements, to have this lot cleared of the lien of those mortgages, if he had complied with his contract? Yes, sir. What were you to do with the purchase money, when you received it? It was to go to Mr. McGee or Mr. Sirrine, just like the contract reads. And they were to release the mortgage? `Yes, sir."

At the time of the agreement, J. C. Jarrard & Bro., a mercantile firm, of which the defendant was a member, were in possession of the house and lot, under an agreement with the plaintiff, entitling them to the possession, from December 1st, 1909, to December 1st, 1910; and, at

the time of the fire, on the 31st of August, 1910, they had paid the rent that was then due.

His Honor, the Circuit Judge, decreed that the plaintiff was entitled to specific performance, and the defendant appealed.

The main question is, whether the loss arising from the destruction of the storehouse by fire, should be sustained by the plaintiff or the defendant.

The rule is thus stated in *Hawkes* v. *Kehoe et al.*, 193 Mass. 419: "When, as in this case, the conveyance is to be made of the whole estate, including both land and buildings, for an entire price, and the value of the buildings, constitutes a large part of the total value of the estate, and the terms of the agreement show, that they constituted an important part of the subject matter of the contract, it is now settled by the decision in *Wells* v. *Calnan,* 107 Mass. 514, that the contract is to be construed, as subject to the implied condition, that it no longer shall be binding, if, before the time for the conveyance to be made, the buildings are destroyed by fire. The loss by the fire, falls upon the vendor, the owner; and if he has not protected himself by insurance, he can have no reimbursement of this loss, but the contract is no longer binding upon either party. If the purchaser has advanced any part of the price, he can recover it back. *Thompson* v. *Gould,* 20 Pick. (Mass.) 134, 138. If the change in the value of the estate, is not so great, or if it appears, that the buildings did not constitute, so material a part of the estate to be conveyed, as to result in an annulling of the contract, specific performance may be decreed, with compensation for any breach of agreement, or relief may be given in damages." See also the notes to the said case, reported in 9 Am. and Eng. Ann. Cases 1053.

It was held in the case of *Phinizy* v. *Gvernsey,* 36 S. E. R. (Ga.) 796, that where a binding executory contract for the sale of improved realty has been made, and the

improvements are destroyed by fire, before the vendor is in a position, to convey the legal title, and before the vendee obtains possession, the loss is that of the vendor. The following language of the Court shows, that its conclusion was based upon the principle, that the vendor was still the *owner* of the property, at the time of its destruction by fire: "As the vendee had not gone into possession before the fire, and the vendors were not, prior to that occurrence, in a position where they could make to the vendee, an unincumbered title to the property they were the owners of the property at the date the fire occurred, and the loss resulting therefrom must fall upon them."

Those who contend for a contrary doctrine rely, principally, upon the case of *Paine* v. *Meller,* 6 Vesey 349, in which the opinion of the Court, was delivered (1801) by Lord Eldon. The facts of that case were as follows: On the 1st of September, 1796, the plaintiffs sold to the defendant at auction, some houses in Radcliffe Highway, upon the usual terms of a deposit of 25 per cent., and a proper conveyance to be executed, upon payment of the remainder of the purchase money, at Michaelmas next. At the time specified for the performance of the contract, an abstract of title was delivered, which was so defective, that the purchase could not be completed at that time. A further abstract was delivered to the solicitor of the defendant, about the beginning of October. Negotiations as to the abstract of title continued through October and, about the end of that month, the defendant's solicitor agreed to waive all objections, if the plaintiff would allow him eleven guineas, and refused a proposal to give up the purchase. The plaintiff agreed to make the allowance desired. On the 4th or 5th of November, the defendant's solicitor sent a draft of a conveyance. The draft was returned to the defendant's solicitor, the deeds were engrossed; and on the 16th and 17th of December, he declared himself satisfied with the title; and said the deeds would be ready in

two or three days; and that he should complete the purchase, under the promise of the eleven guineas. On the 18th of December the houses were burnt; the insurance having been suffered to expire at Michaelmas 1796.

The plaintiffs brought an action for specific performance of contract.

The Court used this language: "The abstract first delivered, was undoubtedly imperfect in certain respects * * * Unquestionably that abstract was not satisfactory; and the express condition of the sale, could not be complied with. Of course, the defendant could not be called on to pay his purchase money. Then it was with the vendee to choose to go on with the bargain, or to put an end to the contract. The agent however, chose not to put an end to it, and, though a circumstance took place at Michaelmas, sufficient to put an end to any action of law, the contract was kept alive, at least to the 10th of December. * * * If in equity these premises belonged to the vendee, he would have a title to the rents and profits at Michaelmas by relation; and he must pay the purchase money, with interest from that time. First it is said, the title was never accepted in fact: *2ndly,* if not, under these circumstances, a court of equity will not compel a specific performance. As to the second point, the objection is grounded upon two circumstances: 1st, the simple fact of the fire; 2ndly, that the premises had been insured prior to the contract; that that fact and the fact that the insurance expired at Michaelmas 1796, were not disclosed; and that the premises afterwards remained uncovered by any insurance * * * The question whether insured or not, is with the vendor solely, not with the vendee; unless he proposes something upon that; and makes it matter of contract with the vendor, that the vendee shall buy according to that fact, that the house is insured. I am therefore of opinion, that if the agent on behalf of this purchaser did accept this title previously to the destruction of the premises, the vendors are

in the situation, in which they would have been, if the title and conveyance, were ready at Michaelmas 1796, but by the default of the vendee were not executed; but the title was accepted and the premises were burnt down, on the quarter-day. * * * There ought to be some reference to the master, or an inquiry before a jury, but that must not be upon the validity of the title, for it is clear, the objection to the freehold title that it was not old enough, and the other objection, that the purchaser had the right to insist upon the release of the annuities were waived. The inquiry must be, whether the title had been accepted by the agent on behalf of the defendant, on or before the 18th of December, 1796."

There was a reference to the master directing him accordingly.

That case seems to have been misunderstood.

The Court decided that all objections to the validity of the title had been waived; and that the case should be referred to the master, for the purpose of reporting, whether the title had been accepted by the defendant, before the fire took place.

It will thus be seen, that the question whether the title tendered by the plaintiffs, was such as the defendant was compelled to accept, was not properly before the Court for consideration, as the objection to all defects had been waived. The syllabus, which is as follows, shows that the reporter so understood the decision:

"Contract for the sale of houses, which from defects in the title, could not be completed on the day. The treaty, however, proceeded upon a proposal to waive the objections upon certain terms. The houses being burnt before a conveyance, the purchaser is bound, if he accepted the title, and the circumstances that the vendor suffered the insurance to expire at the day, on which the contract was originally to have been completed, without notice, makes no difference. A reference to the master was therefore

directed to inquire, whether the proposal was accepted or acquiesced in, on behalf of the purchaser."

It is conceded that the question under consideration, has not been judicially determined in this State, and that the authorities elsewhere are conflicting.

The reason urged by those who contend, that the loss should fall upon the vendee, is that when the parties entered into the contract for the sale of the land, the vendee became the equitable owner thereof, and, that as equity considers that as done, which should be done, he must be regarded as such owner, when the parties enter into the contract, although it was executory.    In other words, that he becomes the real owner, and must bear the burdens and responsibilities of owner, before the time arrives when the parties agreed, he should become the legal owner.    The principle that the vendee becomes the equitable owner of real property, while the contract is still executory, was established for the purpose of enabling him, to resort to a court of equity, for the protection of his rights, on the ground that a mere action for damages, arising from a breach of the contract, by the vendor, would not afford him equitable relief.    It was not intended to enable the vendor, to escape liability for a loss, which he could have prevented, by a reasonable adherence to business principles, and by taking such action, as might reasonably be expected to influence the conduct of an ordinarily prudent man, especially, as in this case, when the vendor did not surrender possession to the vendee, but was exercising the rights of owner in the enjoyment of the beneficial interests, at the time of the fire.    J. C. Jarrard & Bro., a firm composed of the defendant and P. D. Jarrard, were in possession of the house and lot, as tenants of the plaintiff, when the house was destroyed.    The plaintiff testified that they were in possession under the lease which she had made to them. The defendant was not in possession as vendee, but in his representative capacity, as a member of the firm, which

is a distinct entity from the members of the firm, in their capacity as individuals. *Bischoff* v. *Blease,* 20 S. C. 460.

It cannot be successfully contended, that the loss should fall upon the vendee, on the ground that he was the owner of the property, at the time of the fire. The word "owner" is of very comprehensive signification, and may be applied to more than one person, in regard to the same property, and at the same time. One may be regarded as owner for a certain purpose, and another for an entirely different purpose. In the case under consideration, the defendant may be regarded as owner, for the purpose of enabling him to resort to the Court, in the exercise of its equitable jurisdiction for specific performance, of this contract, and thus become vested with the legal title, while on the other hand, we propose to show, that the plaintiff was owner, and that the loss should be sustained by her, because it was her *duty* as owner, to insure the property, not only for the protection of her own rights, but also those of the vendee, which were in her possession, as trustee.

"The word 'owner' when applied to real estate without any qualifying words, in common as well as legal parlance, has been held to mean, *prima facie,* the person in whom is the fee simple. But an owner is not one necessarily owning the fee simple; one having a lesser estate, may be an owner; in fact, the term has been applied to any one, having a defined interest in land, but not to one, in naked possession. It may mean either a trustee of lands, or his *cestui que trust,* a mortgagor in possession or before default, and in a few instances the mortgagee, though not usually an executor having power to sell land for certain purposes, a tenant for life, and the remainderman in fee, a tenant for years, a tenant in common, the vendor under an executory contract for the sale of land, and sometimes the vendee, though not always." 28 Enc. of Law 234-5-6.

A person may exercise one of the rights incident to title, while another person is exercising a different rght, and

both may, for certain purposes, be denominated the owner. In the present case the defendant was not in possession, did not have the right to possession, nor did he have the right to exercise a single right incident to ownership, but simply had the right to specific performance of the contract, upon condition that he complied with the requirements of the contract, to be performed by him; while, on the other hand, the plaintiff as between her and the defendant, had not only the actual possession, but likewise the right of possession, through her tenants, also the legal title, of which she could not be divested before the time mentioned in the contract. As between the plaintiff and the firm of J. C. Jarrard & Bro., the law would have thrown upon her, the loss of rents, for the unexpired term of the lease, and there is no just reason, why she should not bear the loss, as between her and the defendant.

When the plaintiff entered into the contract, to convey the land upon certain conditions, it was, in the first place, her duty to the vendee to resort to such means as, it might reasonably be expected, would be used by a person of ordinary prudence, to protect her property, in order that she might comply with the requirements of the contract on her part. Good faith and a due regard to her obligations, required such action. In the second place, as trustee for the vendee, the law enjoined upon her, that she should use all reasonable means, to protect the rights of her *cestui que trust,* one of which was, to insure the property from loss by fire. It can not be successfully contended, at this late day, that common prudence and an ordinary regard to business interests did not demand, that the house should have been insured.

The following are the reasons why the duty rested upon the vendor, to insure the property:

1. She was in possession, exercising acts of ownership, and enjoying the beneficial interests of the estate, out of

which it was only just and equitable, that the premiums of insurance should have been paid.

2. The defendant did not have the right to enter upon the premises, except by the consent of those in possession, and, without such consent, would have been a trespasser.

3. The insurable interest of the vendee was negligible, being merely the difference between the value of the land and the agreed price, while the vendor's insurable interest, was sufficient to have protected her from financial loss. The insurance of the property would, also, have resulted in the protection of the vendee.

4. It is fallacious to argue, that the loss should be borne by the vendee, on the ground that, if the value of the land enhances, he would receive the benefit thereof, and therefore, he should sustain the loss, when the land decreased in value. The argument is not sound, for the reason that in one case, he gets the specific property for which he bargained, whereas in the other case, he does not, on account of the failure of the vendor to carry out his contract, by disregarding, as we have shown, the double duty resting on him, to protect the property from destruction by fire.

5. The decree not only imposes upon the vendee, the duty of carrying out his part of the contract, but, in effect, makes him responsible for the failure of the plaintiff to comply with her obligation.

6. If the vendee had entered into possession, he, unquestionably, would have had to bear the loss, on the ground that it was his *duty* to protect the property. It would, therefore, be inequitable to throw the loss on him, when the property was destroyed, during the time the vendor was in possession.

7. The rule that equity considers as done that which should be done, can not be invoked to create a right contrary to the agreement of the parties. In this case it is inapplicable, for the reason that the rights and duties of the vendee, in connection with the premises, were not to

begin, until there was a compliance with all the conditions mentioned in the agreement. Furthermore, the doctrine is only applicable, when there has been a failure to discharge some obligation, then resting upon the party, against whom the doctrine is invoked. It connotes a wrongful act in failing to meet a subsisting obligation. At the time of the fire, the defendant had not failed to discharge any duty then resting upon him. If he had entered into possession, he would have been compelled to sustain the loss, by reason of the duty arising from the fact of possession, but the contract did not undertake to impose upon him any duty whatever in regard to the protection of the house and lot before the conditions of the contract were performed.

8. By reference to the contract, it will be seen, that it has been construed by the parties themselves, and that they regarded the vendor, and not the vendee, as the "owner," and that he should be so considered, until the agreement was completed.

9. In the case of *Hugenin* v. *Courtenay,* 21 S. C. 403, the Court held, that after contract for the sale of a leasehold interest to commence *in futuro,* but before the purchaser had right of entry, *or was entitled to the possession or use of the property,* a considerable part of the land was washed away by an ocean storm, the loss must fall on the vendor, *who was still the owner,* and that he was not entitled to a specific performance of the contract. The Court also used the following language, which shows that the terms of the contract, may amount to nothing more than an executory agreement, and that it may contain conditions which show that the parties did not regard the contract as an absolute sale at the time, to wit: "Under a proper construction of the terms of the contract in this case, it amounted to nothing more than an executory agreement for the sale of a leasehold estate, the term of which was to commence, and possession to be given at a future day. The very fact that it contained

a condition—'provided I can obtain the consent of the present lessee'—shows conclusively that neither of the parties could have regarded the contract, as an absolute sale at the time."

There is no difference in principle, between that and the present case. In the case under consideration just as in that case, the consummation of the agreement, depended upon the action of a third party, to-wit: those who held encumbrances on the property.

In the case of *Blackwell* v. *Ryan,* 21 S. C. 112, the Court, speaking of an action for specific performance of a contract, for the sale of real estate, by which the vendee agreed to pay a certain amount as purchase money, and the vendor agreed to make title, when the purchase money was paid, used this language: "This contract embodied mutual covenants, dependent one upon the other, and was therefore what is known as *an executory contract* as to land, which conferred upon the vendor what Herman and Jones and other elementary writers denominate *'a lien by contract or reservation,'* as distinguished from the technical *'vendor's lien,'* in which the title is conveyed to the vendee." It will thus be seen, that the covenants are mutual, and dependent, the one upon the other, so that, the vendee can not exercise a single right incident to the ownership of the land, unless conferred upon him by the contract, until he fulfills the conditions, upon the performance of which, he is to acquire the title.

Therefore, as the vendee in this case, was not permitted to exercise any right of ownership, it would be inequitable to impose upon him any duty relative to the protection of the property, over which the vendor was to be allowed to exercise dominion, until the contract was completed.

We have been unable to find a single reason based upon justice and equity, that would make the vendee, and not the vendor in possession, responsible for the loss.

16—93

It is the judgment of this Court that the judgment of the Circuit Court be reversed.

Messrs. Justices Hydrick *and* Fraser *concur.*

Mr. Justice Woods. By an agreement dated 23d July, 1910, the plaintiff, Nannie J. Good, agreed to sell, and the defendant, J. C. Jarrard, agreed to buy a storehouse and lot in the town of Marietta, at the price of eleven hundred dollars. Ten dollars of the purchase money was paid in cash, and the contract provided for the payment of the remainder in equal instalments on 1st December, 1910, and 1st December, 1911, and for the execution of a deed of conveyance by the plaintiff and a mortgage by the defendant upon payment of the first instalment. When this agreement was made the storehouse was rented to J. C. Jarrard & Bro., a mercantile firm, of which the defendant was a member, from 1st December, 1909, to 1st December, 1910. The house was destroyed by fire on 31st August, 1910, and the firm paid rent to Mrs. Good up to that date.

The defendant refused to comply with the contract of purchase and the plaintiff brought this action, alleging her own readiness to make the conveyance as agreed and the refusal of the defendant to comply; and asking for judgment for the instalment due, and for a decree requiring the defendant to execute a mortgage for the other instalment upon tender to him of a conveyance of the premises with a general warranty, free of incumbrances. Other defenses were set up, but the real question made in the Circuit Court and by the appeal is whether the defendant was relieved from the contract of purchase by the fact that the storehouse was destroyed by fire.

The question has been much discussed by the Courts, but since the case of *Paine* v. *Meller,* 6 Vessey 349, decided in 1801, the following rule, laid down by Lord Eldon, has been followed by the Courts of England and this country with

little dissent: "As to the mere effect of the accident itself no solid objection can be founded upon that simply; for if the party by the contract has become in equity the owner of the premises, they are his to all intents and purposes. They are vendible as his, chargeable as his, capable of being incumbered as his; they may be devised as his; they may be assets; and they would descend to his heir. If a man had signed a contract for a house upon that land, which is now appropriated to the London docks, and that house was burnt, it would be impossible to say to the purhcaser, willing to take the land without the house, bacause much more valuable on account of this project, that he should not have it." The Courts of Massachusetts, Maine, New Hampshire and Oregon maintain that the vendee is not the owner until the legal title passes, and that it is illogical to hold that the loss should fall on him until he has acquired the legal title. By refinements as to the facts the effort has been made to show that Lord Eldon did not intend *Paine* v. *Meller* to lay down the general rule that the vendee must bear the loss arising from the destruction of the property of which he had become the equitable owner by reason of a contract of purchase. But these refinements fade away in view of the reasons stated for holding that the vendee must bear the loss as the real owner of the premises, that "they are vendible as his; chargeable as his; capable of being incumbered as his; they may be devised as his; they may be assets; and they would descend to his heir." Not only so, but such refinements have been disregarded and the general rule that the vendee, as the real owner, must bear the loss of his property has been followed by the English Courts and by the great majority of the appellate courts of this country. The numerous decisions accepting the rule are collected in note to *Sewell* v. *Underhill* (197 N. Y. 168), 27 L. R. A. (N. S.) 233, 134 Am. St. 863, in note and in 39 Cyc. 1641. Perhaps there is no higher authority on such a subject than Pomeroy's Equity Jurisprudence, and there the rule is thus

stated: "The effect of an executory contract for the sale of land, in working an equitable conversion, and in clothing the purchaser with an equitable estate in the land, and the vendor with an equitable ownership of the purchase price, has already been described. As soon as the contract is finally *concluded,* although it is wholly executory in form, these rights and estates become fixed and vested. It follows, therefore, that the purchaser, being the equitable owner, is entitled to all the benefits and assumes all the risks of ownership." "From that time he takes the benefit of all *subsequent* improvements, increases, gains, rises in value, and other advantages happening to the property. Conversely, the subject matter is at his risk, and he must bear all total or partial losses, from fire or other accidental cause, or from trespassers, and all depreciations in value, and other disadvantages; *res perit domino.* This *liability* is, however, subject to the important limitation, that the loss or depreciation does not arise from the neglect, default, or unwarrantable delay of the vendor in carrying out the contract." Section 406 and note.

The reasons supporting this general consensus of authority seem plain when the real and practical interests of the parties and their relations to the property are considered. The legal title of the vendor after the making of the contract is nothing substantial beyond the mere use of the property until time to deliver the title, and security for the purchase money. The equitable title, which vests in the vendee as soon as the contract is made, is the real beneficial title, subject only to the temporary postponement of the use and to the lien for the purchase money. However great may be the accidental loss in value or the accidental increase, the vendee bears the loss or takes the increase, as the real owner of the property. Since the contract requires the vendor to convey and the vendee to accept the conveyance, equity considers the relations of the parties to the property and to each other the same as if that were done which the contract

requires shall be done; that is, it considers the vendee the owner of the property, subject to the vendor's rights laid down in the contract.

The precise question here involved, whether the vendee must comply with his contract after a partial destruction of the property consisting of real estate held in fee, has not been before the Courts of last resort in this State. But the principle has been decided, for it has been held that after the execution of a contract of sale the vendee is to be treated as the owner and upon his death the land passes to his heir. In *Landrum* v. *Hatcher,* 11 Rich. 54, the Court, citing Story Eq. Jur. 1212, states the law thus: "Where a contract is made for the sale of land, the vendor is in equity immediately deemed a trustee for the vendor of the purchase money. Under such circumstances, the vendee is treated as the owner of the land and it is *divisible* and descendible as his real estate." *Roddey* v. Elam, 12 Rich. Eq. 343; *Whitmire* v. *Boyd,* 53 S. C. 315, 31 S. E. 306. From this doctrine that the vendee is the real owner, it inevitably follows that as the owner he must bear the loss. Being the real owner of the property, he has an insurable interest and he cannot put upon the vendor the loss arising from his own neglect to insure. 39 Cyc. 1641.

The case of *Hugenin* v. *Courtenay,* 21 S. C. 403, is not opposed to the conclusion that the equitable title and the real interest under a contract for the sale of land held in fee simple passes to the vendee, and that the destruction of the buildings by fire is no defense to an action for the purchase money. In that case, in consequence of a storm, the lot on Sullivan's Island, which the plaintiff had agreed to sell to the defendant, was covered by water to such an extent as to make it unfit for the purpose for which it was purchased. The Court rested its conclusion that the vendee was not bound to comply with his contract on the distinction that the vendor held only a leasehold estate. The language of the Court was: "Hence the practical inquiry

in this case is, whether the ownership of the property in question was transferred from the plaintiff to the defendant at the date of the contract above set forth, to-wit, July 25, 1881. According to the authorities, the title or estate of property of the character of that now under consideration does not pass until the leaseholder's term commences and he has taken, or is entitled to take, possession. The very nature of such an estate consists in use and possession." Thus the Court clearly says that the case depends upon whether the vendee had become the owner of the property by his contract of purchase—indicating that if the vendee had become the owner, the loss would fall on him and he would have to pay the purchase money. But this result was prevented by the fact that the case was an exception to the rule and the vendee did not become the owner because the contract related to a leasehold estate. Had the estate been a fee simple the general rule would have applied, the vendee, on the authority of *Landrum* v. *Hatcher* and other cases above cited, must have been held to be the owner of the land upon whom the loss would fall. The title to the land in the case now before the Court being not a leasehold but a fee simple, which in equity passed to the vendee as soon as the contract to purchase was made, under the well settled rule, the law forbids that he be relieved from his purchase on account of the destruction of the building by fire.

Even if the reasons supporting this conclusion were less convincing than they are and the weight of the argument were in favor of holding that the loss should fall on the vendor, yet I venture to think it unwise for the Court to adopt a rule opposed to the current of judicial opinion in England and this country, and irreconcilable, as I have tried to show, with the principle laid down in several cases in this State.

Mr. Justice Watts *concurs.*