21858. BAIR et al. v. WILLIS, Administrator.

ARGUED NOVEMBER 15, 1962—DECIDED JANUARY 14, 1963.

*Dan S. Beeland, A. J. Shirley, Robert Culpepper, Jr.,* for plaintiffs in error.

*Foley, Chappell, Young & Hollis,* contra.

ALMAND, Justice. The plaintiffs, John Barton Bair and his wife Alma Myer Bair, filed in the Superior Court of Muscogee County, a two-count petition against W. Stanford Willis, administrator de bonis non of the estate of James Otis Brown, wherein they seek to recover from said administrator the proceeds, which it is alleged that he has received, on two life insurance policies on the life of Diana Bair Brown, their daughter and the wife of James Otis Brown. The first count of their petition was an action based on their rights as alleged beneficiaries under the terms of one of the insurance policies, and in the second count they seek to be declared the policy beneficiaries under both policies based on equitable grounds. The trial judge

sustained general demurrers to both counts and dismissed plaintiffs' petition, and on these rulings error is assigned.

■ *Count one.* James Otis Brown and his wife, Diana Bair Brown, were killed in an automobile accident on February 22, 1961, the husband surviving his wife by approximately two hours. The defendant, as representative of the estate of the deceased husband, collected the sum of $8,000 as proceeds of a group life insurance policy on the life of the deceased wife. Diana Bair Brown had not designated a beneficiary under the aforesaid group policy and the provisions of the policy with reference to the payment of the death benefits in the event no beneficiary was named were as follows: "If there is no designated beneficiary surviving, the benefits will be paid to your widow or widower under category (1); and if you have no survivor falling in category (1), the benefits will be paid to the survivors falling in category (2), and so on, as necessary, to the other categories. (1) Your widow or widower. (2) Your child or children in equal shares . . . (3) Your parents . . . (4) The duly appointed executor or administrator of your estate. (5) Your next of kin . . ." The policy provided at another point: "To receive payment of the death benefits your beneficiary or other survivor as described under 'Who Receives Your Death Benefits?' must send in a claim on the form provided and furnish written proof of your death and of the claimant's right to payment."

Plaintiffs allege that they are entitled to the proceeds of the group policy as the beneficiaries named in category "(3)." Plaintiffs maintain that the defendant administrator of the estate of James Otis Brown is not entitled to the death benefits as a category "(1)" beneficiary because, "The right to submit proof of loss, and receive payment of benefits under such policy, under its terms, and the intention thereof, and the objects sought to be obtained, being personal to each of the five entitled categories, or contingent beneficiaries, did not extend to the heirs and representatives of any such beneficiary categories, it being clearly the intention of such insurance certificate, and the parties thereto, that the proceeds would vest in and be payable to the 'widow or widower' and the other contingent beneficiaries, only if they

were able personally to make proof of claim for same, and receive payment thereof." There were no surviving children to take as category "(2)" beneficiaries.

We are of the opinion that the trial judge did not err in sustaining the general demurrer to count 1 of plaintiffs' petition. Plaintiffs' contention that the deceased husband did not acquire a vested right to the proceeds of the group policy is unsound. The evidence is that the husband survived his wife some two hours and under the Georgia law survival alone is enough to give the beneficiary a vested right. This rule is stated in *Knight v. Wingate*, 205 Ga. 133, 139 (52 SE2d 604), which held: "In the field of life insurance the law of this State recognizes the right of the insured to purchase . . . an insurance policy on his own life, to name a beneficiary to the proceeds of the policy payable at his death, and to reserve the right to change the beneficiary at any time during his life. In such a contract the beneficiary has no vested interest, but a mere expectancy, subject to be withdrawn by the insured at any time during his lifetime . . . But when the insured dies without changing the beneficiary, the person named in the policy as beneficiary has a vested title to the proceeds. *Bennett v. Rosborough*, 155 Ga. 265 (116 S. E. 788); *Loyd v. Loyd*, 203 Ga. 775 (48 S. E. 2d 365)." See also *Wilbur v. Bankers Health &c. Ins. Co.*, 208 Ga. 401 (66 SE2d 918).

Although we do not find a Georgia decision which establishes the proposition, we are of the further opinion that the failure of the beneficiary to survive and furnish personally to the insurance carrier a proof of death and claim to proceeds does not affect the vested right acquired by the surviving beneficiary upon the death of the insured. Once the beneficiary survives the insured and acquires a vested right, nothing can disturb his vested right to the proceeds, and if he dies, nothing can disturb said vested right from passing to the representative of his estate. "It is generally held that the executor or administrator of a beneficiary dying after insured but before receiving the proceeds of the policy, and even before the filing of proof of death of insured, is entitled to the proceeds as part of his or her estate, and for distribution to his or her next of kin." 46 CJS 55,

Insurance, § 1170. See also 29A Am. Jur. 735, Insurance, § 1654. We are of the opinion that the sound rule is as stated by the Supreme Court of Arkansas in Dinwiddie v. Metropolitan Life Ins. Co., 204 Ark. 677 (1) (163 SW2d 525), where is was held: "Under group life policy provisions that if there be no designation of beneficiary at time insurance shall become payable, insurance shall be payable to insured's mother, and that insurer would pay insurance to beneficiary of record upon receipt of notice and proof of insured's death, where insured shot and mortally wounded beneficiary and killed himself, beneficiary surviving insured, beneficiary's interest in policy vested on insured's death, and she was 'beneficiary of record', notwithstanding that she was dead when notice and proof were made, and insured's mother was not entitled to insurance on ground that designated beneficiary's rights were lost because she did not live long enough to make proof of death." See also Staunton v. Provident Life &c. Ins. Co., 69 Ohio App. 27 (42 NE2d 687).

■ *Count two.* In count 2 of their petition, plaintiffs allege that in the event the insurance proceeds from the group policy and a second policy should become assets of the estate of James Otis Brown, said proceeds would pass by means of intestate distribution to his natural parents and to certain half-brothers and half-sisters of his who are children of bigamous marriages of his parents and of whose existence neither James Otis Brown nor his wife was aware; that James Otis Brown was the offspring of a bigamous marriage of his natural mother and his alleged natural father; that his alleged father had never known of the existence of his son or had never claimed to be his father; that the natural mother of James Otis Brown, admittedly a prostitute, did abandon her son when he was six months old by leaving him on the porch of the residence where she was living, racked with disease, and did thereafter consent to the custody of said infant being taken by the juvenile court and she never sought to regain custody of him; that the custody of James Otis Brown was awarded by the juvenile court to Mr. and Mrs. Barto Summerfold upon their assuming the responsibility of supporting, educating and otherwise performing the obligations and functions of parents, in which relationship the natural mother acquiesced until

the death of her son; that his natural mother has not known or cared about his existence since the time she relinquished his custody to the Summerfolds, her only concern at the time of his death being whether or not he had' left any insurance or other assets which she might claim; that the natural parents of James Otis Brown by their conduct of disloyalty, abandonment, immorality, irresponsibility, wantonness for his welfare and criminal negligence have forfeited all of their parental interest and right in and to their son and the assets of his estate; that Diana Bair Brown had nothing but contempt and revulsion for the natural parents of her husband on account of their treatment of him and the humiliation and embarrassment they had brought to him during his entire life and they would not, under such circumstances, be the natural objects of her bounty; and that had Diana Bair Brown not died in a common accident with her husband, she would have changed the beneficiaries in her life insurance policies, naming her parents as such, thus eliminating as beneficiaries parties who have no just and moral right thereto. Plaintiffs pray that equity assume jurisdiction and assert the equitable principle of considering that done which ought to be done, and adjudge that the plaintiffs, the parents of Diana Bair Brown, are the beneficiaries under the policies. Defendant's general demurrer to count 2 was sustained and on this ruling error is assigned.

The plaintiffs buttress their claim to the insurance proceeds on the maxim that "Equity considers that done which ought to be done." *Code* § 37-106. Pomeroy in his work, "Equity Jurisprudence" states the circumstances necessary for the application of the rule as follows: "In the first place, it should be observed that the principle involves the notion of an equitable obligation existing from some cause; of a present relation of equitable right and duty subsisting between two parties,—a right held by one party, from whatever cause arising, that the other should do some act, and the corresponding duty, the ought resting upon the latter to do such act. Equity does not regard and treat as done what might be done, or what could done, but only what ought to be done. Nor does the principle operate in favor of every person, no matter what may be his situation and relations, but only in

favor of him who holds the equitable right to have the act performed, as against the one upon whom the duty of such performance has devolved." Pomeroy, "Equity Jurisprudence," Vol. 2 (5th Ed.) p. 14, § 365. The word "ought" in the maxim means that the party against whom claim is asserted is under an equitable obligation, not a moral or desirable obligation. The maxim involves the enforcement of an obligation that *ought* to have been done, not one that *might* have been done. See Burgess v. Wheate, 1 Black. W. 123 (10 Eng. Ru. Ca. 614); Wyman v. Ft. Dearborn National Bank, 181 Ill. 279 (54 NE 946, 48 LRA 565); Good v. Jarrard, 93 S.C. 229, 240 (76 SE 698, 43 LRA (NS) 383). In the last case cited the court held: "Furthermore, the doctrine is only applicable, when there has been a failure to discharge some obligation, then resting upon the party, against whom the doctrine is invoked. It connotes a wrongful act in failing to meet a subsisting obligation." There is no charge that the insured or the beneficiary in the two insurance policies were under any legal or equitable obligation to the plaintiffs or that either was guilty of improper conduct affecting them. We have held in Division 1 of this opinion that upon the death of the wife, her husband, as the beneficiary under the policies, had a vested interest in the insurance proceeds, which on his death passed to the representatives of his estate. The maxim of equity that "Equity is ancillary, not antagonistic, to the law; hence equity follows the law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable" (*Code* § 37-103), is applicable here. This court in *Loyd v. Loyd*, 203 Ga. 775, supra, applied this maxim in a case between the named beneficiary in a life insurance policy and another over a contest for the insurance proceeds. There one Vernon Loyd took out an insurance policy naming his mother as beneficiary and retained the right to change the beneficiary. Subsequently, as a consideration for marriage, he agreed to substitute his wife as beneficiary. After his marriage he made no effort to effect the change and at his death his mother was the named beneficiary. This court held that since the mother had a vested interest in the insurance proceeds, before her right would be interfered with, equity would require the existence of

circumstances and facts that in good conscience would demand the fortfeiture of this vested legal right. This court said at page 779: "It is not charged in this case or even claimed that the named beneficiary is guilty of acts or conduct relating to this matter which in any wise subjects her to censure or criticism. Neither is the insurer charged with fault or responsibility for the condition of the policy at the death of the insured wherein the mother remained the named beneficiary. The wife makes no claim that either the insurer or the named beneficiary is responsible in any respect whatever for the failure to change the name of the beneficiary."

The allegations in count 2 are wholly insufficient to authorize a court of equity to substitute the plaintiffs as beneficiaries of the two life insurance policies. Our ruling is not in conflict with the case of *Hewell v. Atlanta Police Relief Assn.*, 184 Ga. 702 (192 SE 828). There one Hewell, a police officer, held a certificate in the Atlanta Police Relief Association with his wife as primary beneficiary. They were killed in a common disaster wherein it could not be determined who died first. Their children claimed the right to the benefits of the certificate. In upholding their rights to recover, the court did so to prevent a forfeiture and allow the benefits to go to the sole survivors of the class which could have been designated as beneficiaries. The instant case does not involve the substitution of beneficiaries to prevent a forfeiture.

The trial court did not err in sustaining the general demurrer to count 2 of plaintiffs' amended petition.

*Judgment affirmed. All the Justices concur.*