**W. B. UHLHORN et al., Appellants,**

**v.**

**Gary H. REID et al., Appellees.**

**No. 14368.**

Court of Civil Appeals of Texas.

San Antonio.

Oct. 20, 1965.

Rehearings Denied Dec. 8, 1965.

Brundidge, Fountain, Elliott & Churchill, Dallas, Carter, Stiernberg, Skaggs & Koppel, Harlingen, for appellants.

Andress, Woodgate, Richards & Condos, Dallas, Mann, Cronfel & Mann, Fansler & Fansler, John E. Fitzgibbon, Raymond J. Goodman, Laredo, for appellees.

MURRAY, Chief Justice.

The parties here involved will hereinafter be referred to as follows: W. B. Uhlhorn, d/b/a Uhlhorn Construction Company, as "Uhlhorn"; Gary H. Reid and Associates, as "Reid"; Trinity Universal Insurance Company, as "Trinity"; Herbert Huch, Vice-President of Trinity, as "Huch"; Ray Hughston, a representative of National Surety Corporation, who wrote Uhlhorn's bonds, as "Hughston"; Union National Bank of Laredo, as "Union Bank"; Harlingen National Bank of Harlingen, as "Harlingen Bank"; the furnishers of materials on the Laredo job, collectively, as "Materialmen."

The nature of this suit was stated by Justice Barrow when the case was before us upon a question of venue. Reid v. Uhlhorn, 359 S.W.2d 278. We here repeat that statement:

"This controversy arose out of the performance of a public housing contract in the City of Laredo, Webb County, Texas (known as Carlos Richter Courts). Uhlhorn was the principal contractor. Reid was the masonry subcontractor, and all other defendants, except the Union National Bank of Laredo, the Harlingen National Bank of Harlingen, and Trinity Universal Insurance Company, had furnished labor or material in performance of the subcontract. (The United States Government was an intervener.) In October, 1959, Uhlhorn entered into a contract with the Housing Authority and duly filed a performance and payment bond as required by Article 5160, Vernon's Tex.Civ.Stats. He then entered into a masonry subcontract with Reid for $175,000.00, and although the subcontract required both a performance and payment bond of Reid, the record reflects that only a performance bond with Trinity Universal Insurance Company as surety was delivered to Uhlhorn.

"After a few months Reid was in financial difficulty, and arrangements were made with the Harlingen National Bank for Uhlhorn to deposit money to cover payroll and material checks of Reid as they were presented. This agreement was set forth in a letter of March 25, 1960, from Reid to Uhlhorn, and was accepted by Uhlhorn. It reads as follows:

'With reference to contract which I, the undersigned, have with Uhlhorn Construction Company, being Job known as the Laredo Public Housing Project, I hereby assign, pledge and transfer to the Harlingen National Bank, Harlingen, Texas, all monies now due or to become due under this contract.

'You are hereby authorized and requested to make all checks payable under this contract to the Harlingen National Bank and the Bank is hereby authorized to use these funds to pay any and all notes which they have signed by myself and the balance of the funds are to be deposited to my checking account with said Bank.'

"Difficulties arose between Uhlhorn and Reid, and in September, 1960, Uhlhorn took over this subcontract and finished it at a cost of approximately $900.00. Upon finishing the work, Uhlhorn had $3,496.74 remaining of the original subcontract of $175,000.00, which sum was interpleaded in this cause. Reid has asserted a claim against Uhlhorn of $18,916.80 for extra work.

"In the meantime, ten persons and firms, including five residents of Webb County, made demand upon Uhlhorn for payment of labor and material used in performance of the subcontract. In August, 1960, the Union National Bank of Laredo filed suit against Reid for checks which had not been paid by the Harlingen Bank and served writ of garnishment on Uhlhorn. Default judgment was taken against Reid, but no judgment has been entered against him. The entire project was accepted on October 31, 1960, but the sum of $24,620.88, which is the total of the demands asserted against Reid and Uhlhorn by the ten creditor defendants, has been withheld from Uhlhorn by the Laredo Housing Authority.

"On January 24, 1961, Uhlhorn filed the interpleader, to which Reid filed his plea of privilege. Each of the other defendants, except the Harlingen National Bank and Pete Herrera, filed cross-actions against Reid and also asserted claim to the interpleaded sum. The plea of privilege was duly controverted, and by agreement of all parties the action on this plea shall control venue on the cross-actions.

"Appellant, Reid, concedes that if the bill of interpleader was proper, venue lies in Webb County. He asserts, however, that there was no basis for interpleader and that the Webb County defendants were simple creditors holding open accounts for contract balances against him.

"This is based primarily on two propositions: first, that the defendant creditors did not comply with Art. 5160 as amended in 1959 (referred to as the McGregor Act), and, second, the agreement of March 26,

1960, with the Harlingen Bank, was an assignment, and after Uhlhorn's acceptance, the subsequent suppliers of Reid, who had not complied with the above statute, had no claim to the fund.

"It is not necessary to this appeal, and we expressly do not determine that one of the creditor defendants, residing in Webb County, Texas, had fully complied with the McGregor Act. Rule 43, Texas Rules of Civil Procedure, materially broadened the interpleader's practice of this State as it existed prior to 1941. The stakeholder may initiate an interpleader action joining persons having claims against him when he is or may be exposed to double or multiple liability. Vol. I, McDonald, Tex.Civ.Practice, § 3, 39; Security State Bank of Pharr v. Shanley, Tex.Civ.App., 182 S.W.2d 136, 138."

The cause has now been heard upon its merits before the Laredo, Webb County, District Court without the intervention of a jury and, speaking generally, has resulted in a recovery in favor of Reid against Uhlhorn in the sum of $17,050.00, part of which grows out of an Eagle Pass job; in favor of the U. S. Government against Reid and Uhlhorn, for federal taxes in the sum of $11,809.87; in favor of Union Bank against Uhlhorn in the sum of $1,054.00, together with $350.00 exemplary damages, with interest. Uhlhorn recovered a judgment over against Trinity for such sums as he might be required to pay due to Reid's defaults. Seven of the materialmen were permitted to recover various sums against Uhlhorn, Trinity and Reid. Uhlhorn recovered of Reid the sum of $4,250.00 for extra work on the Laredo job.

From this judgment Trinity and Uhlhorn have prosecuted this appeal.

The first question we will discuss is the trial court's finding that as of July 5, 1960, Uhlhorn took over the performance of the subcontract in place and stead of Reid who had defaulted in its performance. Almost the entire judgment is based upon this finding. This finding is in conflict with

the statement in our previous opinion, that in September, 1960, Uhlhorn took over this subcontract and finished it at a cost of approximately $900.00. If Uhlhorn took over on July 5, 1960, it cost him many times $900.00 to finish the contract. Furthermore, if Uhlhorn took over on July 5, 1960, he is responsible to the government for the federal taxes, including employment taxes for the third quarter of 1960, and to the materialmen for material furnished after July 5, 1960.

The trial court further rendered a declaratory judgment as follows:

"f. UNITED STATES recover Judgment against UHLHORN finding and declaring, and it is hereby found and declared, that beginning on July 5, 1960, and continuing until the completion of the masonry work on the Carlos Richter Courts at Laredo, Texas, W. B. UHLHORN, doing business as W. B. UHLHORN CONSTRUCTION COMPANY, was the employer of all employees whose names appeared on the reports made to the Laredo Housing Authority of the employees working for GARY H. REID, or GARY H. REID and ASSOCIATES, or both, and as such employer, W. B. UHLHORN was responsible for:

(1) Withholding from the wages paid to such employees all amounts required to be withheld from such wages by the Internal Revenue Code of the United States.

(2) For paying the amounts so withheld, or which should have been so withheld, to the United States.

(3) For making all reports and tax returns as to such employees required of employers by the Internal Revenue Code of the United States.

(4) Paying all taxes due under the Internal Revenue Code of the United States by reason of the employment of such employee."

This declaratory judgment must be set aside because the evidence shows that Uhlhorn did not take over the performance of Reid's subcontract on July 5, 1960. The record goes no further than to show that on July 5, 1960, Reid was in financial difficulties, apparently due to the fact that the federal government had seized a large portion of his bank account, not for taxes he owed on the Laredo job, but for taxes that he owed the government on prior jobs. This led to a conference in which it was decided that Reid would be permitted to go into the retainage of the Laredo job in order to complete his subcontract, and that all funds owed Reid would be paid into the Harlingen Bank, and paid out only on Reid's checks which met with the approval of Uhlhorn or his agent. Reid stayed on the job, contracted for material, met his payroll and hired and fired the employees either himself or through his foreman. Reid testified that on September 8, 1960, he came down in his truck, picked up his equipment and abandoned the job when it was practically completed.

Although Uhlhorn had joint control of Reid's account with the Harlingen Bank in that Reid's checks could not be paid by the Bank without Uhlhorn's approval, Reid was still in charge of the work to be done under his subcontract, and he had not abandoned it on July 5, 1960. Uhlhorn had not taken over the performance of the subcontract merely by having joint control of Reid's bank account, and did not become liable for the federal taxes. Century Indemnity Co. v. Riddell, 9 Cir., 317 F.2d 681; Phinney v. Southern Warehouse Corp., 5 Cir., 212 F.2d 488; Westover v. William Simpson Const., 9 Cir., 209 F.2d 908.

In Century Indemnity Co. v. Riddell, supra, the surety on the bond of a subcontractor brought an action against the District Director of Internal Revenue for the Los Angeles District of California, for the refund of federal income withholding taxes paid under protest by the surety. The U. S. District Court for the Southern District of California, Central Division, en-

tered a judgment for the surety in part, and both the surety and the District Director appealed. The Court of Appeals held that the surety was not an employer liable for the federal taxes merely because the subcontractor gave the surety joint control over the account into which the job payments were to be made. The Court said:

"Joint control of a trust account into which all contract payments are required to be deposited, even from the inception of a contract job as in this case, which still leaves the common law employer in control of all the incidents of employment except the requirement of the concurrence of its bonding surety on checks for withdrawals from such account, does not have the dual effect required by Section 1621(d) (1) of establishing (1) that the contractor 'does not have control of the payment of the wages', and (2) that the surety, whose concurrence is required, does have such 'control of the payment of such wages.' Here, neither has sole control, but neither is the subcontractor without any such control."

The other two cases cited above are largely to the same effect.

The sums recovered by the several materialmen were based upon the finding that Uhlhorn took over the subcontract on July 5, 1960, and this finding being erroneous necessitates the setting aside of each of those recoveries.

The recovery against Uhlhorn in favor of the Government must be set aside. The fact that Uhlhorn issued three post-dated checks aggregating the sum of $9,310.61 upon the request of Reid to cover federal taxes, but which checks were never delivered to the Government and later returned by Reid's attorney to Uhlhorn and payment stopped on same, did not obligate Uhlhorn to pay Reid's taxes on this sum. Payment was stopped on the checks before they were delivered to the Government, and therefore there was no obligation on Uhlhorn to pay Reid's federal taxes. The mere writing of the post-dated checks payable to the Government and sending them to Reid or his lawyer, did not constitute an assignment to the Government of $9,310.61. Williston on Contracts (Rev.Ed.1936), § 428, p. 1232.

The judgment in favor of the Union Bank against Uhlhorn rendered in the garnishment proceedings must be reversed because it is not shown that at the time Uhlhorn was served with the writ of garnishment, and during the twenty-day period within which he was required by law to answer, Uhlhorn had funds in his hands belonging to Reid which were subject to garnishment. Any funds that he may have had in his hands belonging to Reid were so involved at the time as not to be subject to garnishment. Union Bank expressly waived any lien in favor of the U. S. Government on the funds paid into court by Uhlhorn.

This brings us to a consideration of the court's conclusion:

"1. In view of the equitable maxim that the law will regard as done that which ought to have been done, this Court concludes that Trinity must be regarded as having written a payment bond in the amount of $175,000.00 with a defeasance clause conditioned upon the payment in full by Reid of all labor and materials provided to him for the performance of his subcontract with Uhlhorn, and that Trinity is estopped to deny that it wrote and delivered both a performance bond and a payment bond in the amount of $175,000.00 inuring to the benefit of Reid's laborers and materialmen.

"2. That Trinity is liable to the laborers and materialmen who are parties to this action in the amounts for which Reid is liable to such laborers and materialmen, in the amounts as set out in the stipulation on file herein, plus attorney's fees as hereinafter set out."

The subcontract provided that Reid was to furnish all labor and material called for by the plans and specifications to complete the masonry part of the contract to build the Laredo job, and Reid further agreed to furnish to the general contractor a performance and payment bond in the amount of $175,000.00.

Reid applied to Huch, Vice-President of Trinity, the proper person to issue such bond, for the bond or bonds called for in the subcontract and furnished Huch with a copy of the subcontract. Huch agreed to furnish such bond or bonds as were called for by the contract. As a matter of fact, Trinity acting through Huch furnished only a performance bond and delivered it to Hughston, who in turn delivered it to Uhlhorn, who filed it away and authorized Reid to proceed to perform his subcontract as though the proper bonds had been furnished. Apparently, one bond could have been written guaranteeing both performance and payment, or two separate bonds could have been written, one a performance bond and the other a payment bond.

It is quite clear that Trinity should have written both a performance and a payment bond, and it received a premium which would have been sufficient for both a payment and a performance bond, but the fact remains that it executed only a performance bond.

■ The materialmen cannot recover upon a payment bond that was never written. It is true that the bond given must be read in connection with the provisions of the subcontract, but the liability of Trinity to the materialmen must be fixed by the terms of the bond that was written. Employers' Liability Assurance Corp. v. Trane Co., 139 Tex. 388, 163 S.W.2d 398; Bill Curphy Co. v. Elliott, 5 Cir., 207 F.2d 103. Equity cannot be invoked to create a contract which the court considers should have been made but was not. Head v. Sellers, 251 Ala. 453, 37 So.2d 664; Bair v. Willis, 218 Ga. 563, 129 S.E.2d 774; Jacobs v. Abraham Lincoln Life Ins. Co., 223 Iowa

1157, 274 N.W. 879; Wilkie v. Phil. Life Ins. Co., 187 S.C. 382, 197 S.E. 375.

It has been said that equity is a shield and not a sword. Even though Trinity might be estopped to deny that it executed a payment bond, it still remains that no payment bond was ever executed. Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660; Washington Nat. Ins. Co. v. Craddock, 130 Tex. 251, 109 S.W.2d 165, 113 A.L.R. 854; Alco Oil and Gas Corp. v. Concord Oil Co., Tex.Civ.App., 375 S.W.2d 463; Marek v. Goyen, Tex.Civ.App., 346 S.W.2d 926; Great American Reserve Ins. Co. v. Mitchell, Tex.Civ.App., 335 S.W.2d 707; Powell v. American Cas. & Life Co., Tex.Civ.App., 250 S.W.2d 744; Massachusetts Bonding & Ins. Co. v. Dallas Steam Laundry & Dye Works, 85 S.W.2d 937; Guggenheim v. Dallas Plumbing Co., Tex. Civ.App., 59 S.W.2d 105.

■ The court erred in holding that Trinity is liable to the laborers and materialmen in the amount for which Reid is liable, based on an alleged verbal agreement to pay the materialmen, because such an agreement was barred by the two-year statute of limitation. Art. 5526, Vernon's Ann.Civ.Stats.

■ Reid recovered from Uhlhorn the sum of $7,851.00 as a balance and additional sums due him on the Eagle Pass job. $3,178.00 of this amount represented five separate items of extra costs totaling the sum of $3,178.00, to which Reid added 20% for overhead and profit. The subcontract between Reid and Uhlhorn on the Eagle Pass job contained the following provision:

"No extra work or charges under this contract will be recognized or paid for unless agreed to in writing before the work is done or the charges made."

This clause precluded Reid from recovering any of the items claimed by him. There was no agreement in writing for these items, and they were for extra work and

charges under the subcontract. The trial court erred in allowing Reid to recover upon these items. State v. Martin Bros., 138 Tex. 505, 160 S.W.2d 58; City of Dallas v. Shortall, 131 Tex. 368, 114 S.W.2d 536; Chambless v. J. J. Fritch General Contractor, Inc., Tex.Civ.App., 336 S.W.2d 200.

■ The recovery by Reid against Uhlhorn in the sum of $4,679.00 must be reversed because it is not supported by the pleadings or the findings of fact by the trial court. Attorney for Reid orally asked leave of the court to interline this item in his pleadings. The court did not rule upon this request, and such interlineation was never made in the pleadings. The trial court refused Uhlhorn's leave to file a trial amendment pleading payment of this item, which had not been plead by Reid. The trial court was required to file findings of any fact concerning any balance owing to Reid by Uhlhorn on the Eagle Pass job. Rule 299, Texas Rules of Civil Procedure; McDonald, Texas Civil Practice, § 16.09, p. 1300; Pinson v. Dreymala, Tex. Civ.App., 320 S.W.2d 152. A judgment cannot be supported by implied findings where no element of the ground of recovery has been found by the trial court. Jack Ritter Inc. Oil Co. v. Fred Bandas and Sons, Inc., Tex.Civ.App., 387 S.W.2d 70.

That part of the judgment which granted Uhlhorn a recovery against Reid in the sum of $4,250.00 for extra labor on the Laredo job is based in part upon the court's finding that Uhlhorn took over Reid's subcontract on July 5, 1960. We have hereinbefore set this finding aside as being unsupported by the evidence and therefore this recovery by Uhlhorn must necessarily fail. The date on which Uhlhorn took over the subcontract from Reid is still an unde-termined question of fact, and this Court can go no further than to determine that it occurred some date subsequent to July 5, 1960. There are other questions of fact which must first be determined by the trial court. With these questions of fact undetermined this Court cannot here render judgment.

For the error above pointed out, the judgment is reversed and the cause remanded to the trial court for a new trial not inconsistent with the holdings made in this opinion.

On Motions for Rehearing.

■ Appellant W. B. Uhlhorn, in his motion for rehearing, has called to our attention the fact that we did not expressly dispose of that portion of the judgment of the trial court which gave Reid judgment against Uhlhorn for $9,199.00 owing on the Laredo job. The Laredo contract contained the same provisions against claims of "extras", unless authorized in writing, as the contract governing the Eagle Pass job. For the same reasons stated with reference to the claim for extras on the Eagle Pass job, Reid cannot justify a claim for extras on the Laredo job. Any judgment awarded Reid for "extras" on the Laredo job is reversed and set aside. We will not attempt to here render judgment on these items because we have remanded the entire cause and the trial court can better take care of them when it has the entire case before it on a new trial.

The motions for rehearing by Uhlhorn, the United States Government, Union National Bank of Laredo, Gary H. Reid, Herring-Price Lumber Company, Inc., West-Texas Builders Supply Company, Laredo Brick Company, Inc., and P. C. Chapa, have all been carefully considered by us and are each overruled.