**PHINNEY, Director of Internal Revenue,**

v.

**SOUTHERN WAREHOUSE CORP.**
No. 14613.

United States Court of Appeals
Fifth Circuit.
April 30, 1954.

H. Brian Holland, Asst. Atty. Gen., Washington, D. C., Ellis N. Slack, David O. Walter, Dudley J. Godfrey, Jr., Sp. Assts. to Atty. Gen., Washington, D. C., Brian S. Odem, U. S. Atty., J. Lev Hunt, Asst. U. S. Atty., Houston, Tex., for appellant.

Eastham & Williams, A. J. Eastham and Willard C. Williams, Houston, Tex., for appellee Southern Warehouse Corp.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Plaintiff, appellee, sued for refund of (1) Income Taxes, Subchapter D, Chapter 9, of the Internal Revenue Code, 26 U.S.C.A. §§ 1621–1627, (2) taxes collected under the Federal Insurance Contributions Act, Subchapter A, Chapter 9, of the Internal Revenue Code, 26 U.S.C.A. §§ 1400–1432, and (3) Federal Unemployment Taxes, Subchapter C, Chapter 9, of the Internal Revenue Code, 26 U.S.C.A. §§ 1600–1611, for the period August 14, 1945, to October 30, of the same year. From a judgment in favor of the taxpayer, the Director of Internal Revenue appeals.

Southern Warehouse Corporation, called Southern, made a contract with one Gaddy to erect a rice drying plant, with the usual provision for withholding as a protection fifteen percent of the amounts accruing as the work progressed. Gaddy gave a bond with the United States Fidelity and Guaranty Company (called bonding company), as surety. The latter exacted indemnity of the contractor and one Pfeiffer, the electrical contractor on the job, bound himself to hold the surety company harmless for its undertaking.

Gaddy, who had several other contracts at the same time, got into financial trouble, and, in order to have the building completed on time, Southern, with the approval of the bonding company and Pfeiffer, agreed to pay out of the fifteen percent withheld into an account in Gaddy's name funds to continue with the work, on which checks were to be signed jointly by Gaddy and Pfeiffer. The latter selected one Tomlinson, appellee's auditor, as his agent to sign these checks. It later developed that Pfeiffer stood to lose some $40,000.00 and appellee agreed to share the loss, provided it did not exceed $35,000.00.

The case turns upon the question of whether the lower Court was correct in its holding that the appellee was not the employer, for tax purposes, of the workmen on the job originally employed by Gaddy. The facts were stipulated largely and were found by the lower court as follows:

"(1) All of the construction work above referred to was done and performed by J. W. Gaddy, contractor, through his own superintendents, foremen, and workmen; these parties worked exclusively for Gaddy and were hired, supervised, directed, controlled and discharged solely by Gaddy. Gaddy's employees were not subject to control by plaintiff in the

means, method or manner of performance of their work.

"(2) The few instances in which payment was made by plaintiff to Gaddy in the exact amount of Gaddy's weekly payroll did not constitute the plaintiff as the employer, as that term is defined in Section 1621 (d) (1), and did not subject plaintiff to liability for the taxes in question. The fact that the figures were identical resulted from the care being taken by Pfeiffer and bonding company to assure that the payments made by plaintiff actually were used in the construction of this particular job.

"(3) In those instances where the plaintiff issued its check directly to Gaddy's employees, in each instance this resulted from the fact that the employee in question was being discharged and was entitled to his wages immediately; and when Gaddy and Pfeiffer, and later Gaddy and Tomlinson, were not readily available for issuing a check upon the special account, plaintiff paid such employees as an accommodation to all concerned and charged such payment as an additional advance against the contract. Defendant has conceded that it makes no claim as to the trifling amount of tax resulting from these payments alone, but offered and points to, the evidence as tending to show that plaintiff was the employer of all of the employees.

"(4) Except as reflected in the next preceding paragraph, plaintiff did not have control of the payment of the wages of Gaddy's employees, but simply advanced to Gaddy, as progress or partial payments, the funds from time to time with which Gaddy (with counter-signature of Pfeiffer, and later Tomlinson) paid his own employees."

Appellant argues that by the arrangement thus found, the appellee "took away from Gaddy, power as an independent contractor to dispose of the funds advanced according to his own judgment * * * *" and that what was done amounted to payment of wages by the appellee. Section 1621(d) (1) provides:

"(d) Employer. The term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—

"(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' (except for the purposes of subsection (a)) means the person having control of the payment of such wages;"

We think the evidence clearly shows that the arrangement by which the work was permitted to continue was made mainly to protect Pfeiffer, and that Gaddy still continued to employ, control, and direct all of the employees as he had done before. The advances were made in the manner stated to insure that they would be applied to the payment of material and labor bills and not be diverted to the other jobs which Gaddy was carrying on. None of the parties other than Gaddy, and particularly appellee, made any attempt to have a voice in the matter of who should be employed, their wages, etc., and there was absolutely no change in the arrangement with respect to such matters.

Appellant cites United States v. Fogarty, 8 Cir., 164 F.2d 26, 28, 174 A.L.R. 1284 and United States v. Curtis, 6 Cir., 178 F.2d 268, certiorari denied 339 U.S. 965, 70 S.Ct. 1001, 94 L.Ed. 1374. However, in those cases the original employers went into bankruptcy and all that was held was that the trustees stepped into their shoes as to the wages earned before the filing of the petition. It is unnecessary to cite authorities to the effect that when a trustee is elected or appointed the title to a bankrupt estate is vested in that officer. We see no similarity to the present case. We think the situation here is substantially the same as that of Westover v. William

Simpson Construction Co., 9 Cir., 209 F.2d 908.

We agree with the Court below that the record fails to support the appellant's contention and the judgment is

Affirmed.