317 F.2d 681
 CENTURY INDEMNITY COMPANY, Appellant,
v.
Robert A. RIDDELL, District Director of Internal Revenue for the Los Angeles District of California, Appellee.
Robert A. RIDDELL, District Director of Internal Revenue for the Los Angeles District of California, Appellant,
v.
CENTURY INDEMNITY COMPANY, Appellee.
 No. 17354.
 United States Court of Appeals Ninth Circuit.
 April 30, 1963.
 
 1
 Arthur H. Deibert and A. L. Burford, Jr., Los Angeles, Cal., for appellant and cross-appellee.
 
 
 2
 Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Sharon L. King, Dept. of Justice, Washington, D. C.; Francis C. Whelan, U. S. Atty., and Richard G. Sherman, Asst. U. S. Atty., Los Angeles, Cal., for appellee and cross-appellant.
 
 
 3
 Before CHAMBERS and MERRILL, Circuit Judges, and TAVARES, District Judge.
 
 
 4
 TAVARES, District Judge.
 
 
 5
 Both parties in this case — namely, Century Indemnity Company (hereinafter called Century) and Robert A. Riddell, District Director of Internal Revenue for the Los Angeles District of California (hereinafter called Director) — have appealed from portions of a judgment involving federal income withholding taxes on wages for the period between December 7, 1953, and September 17, 1954. The decision below being oral, is unreported.
 
 
 6
 Century, the surety on the bond of a subcontractor White-Ahlgren Co., Inc. (hereinafter called White-Ahlgren or the subcontractor) was assessed by the Director for federal withholding taxes as an alleged "employer" under certain provisions of the Internal Revenue Code of 1939, as enacted by the Current Tax Payment Act of 1943, and as further amended,[1] and the applicable Treasury Regulations.[2]
 
 
 7
 Century paid the assessments under protest, and brought this action for refund thereof.
 
 
 8
 The case below also involved claims for refund of certain other sums paid under protest by Century on the Director's claim of liability for taxes under the Federal Insurance Contributions Act, and the Federal Unemployment Taxes Act, which claims were decided below favorably to Century and from which the Director has not appealed, the lower court having held that Century was not the "employer" within the meaning of the applicable statutes for the purpose of those taxes.
 
 
 9
 The facts found by the lower court and which are based upon substantial evidence, are as follows:
 
 
 10
 Century is a Connecticut corporation qualified to do business in California. On October 6, 1953, White-Ahlgren entered into a subcontract with Marine Development, Inc. (hereinafter called Marine or the Contractor) whereby White-Ahlgren undertook to complete the concrete work on a one thousand unit Wherry Housing project, Camp Pendleton, California. In connection with the subcontract, and as required by applicable statutes and regulations, White-Ahlgren applied for and secured a contract bond from Century and executed the usual indemnity agreement, all in the amount of the subcontract price of some $549,000. This bond was executed by White-Ahlgren as principal and Century as surety, and ran to Marine as owner and Republic National Bank of Dallas, Texas, as mortgagee. Under the bond, Century guaranteed to Marine and the mortgagee the faithful performance of the subcontract and payment for all labor and material incurred in connection with such performance. Work under the subcontract began December 7, 1953.
 
 
 11
 At the time the bond was executed, White-Ahlgren, by agreement with Century, obtained a commercial checking account in the Security Trust and Savings Bank of San Diego, California, (hereinafter called the Bank) which was designated as "White-Ahlgren Trust Account No. 1" (hereinafter called the Trust Account). Under the arrangement made at the inception of this account and subsequent modifications thereof, White-Ahlgren and Century had joint control of this account and the resolutions and signature cards filed with the bank, as interpreted by the parties and by the court, required all checks drawn against the Trust Account to be signed by an authorized representative of White-Ahlgren on the one hand, and countersigned on the other hand by any one of several designated representatives of Century, who were to sign as "trustee" or "attorney-in-fact" of Century.[3]
 
 
 12
 The subcontract provided, among other things, (a) for monthly progress payments less 10% and less all previous payments, etc. and (b) that subcontractor should pay all Social Security and other taxes imposed on subcontractor as employer in connection with the labor provided by subcontractor under the contract.
 
 
 13
 The application for the bond contained a usual provision, in Section FOURTH, that the Century as surety should be subrogated to all rights, privileges and properties of the subcontractor in said contract and that the subcontractor did thereby "assign, transfer and convey to said Company all the deferred payments and retained percentages rising out of this contract, and any and all monies and properties that may be due and payable" to said subcontractor "and the balance of the contract price remaining and unpaid at the time of the happening" of any one of certain specified contingencies "or that may thereafter become due and payable" to subcontractor "on account of this contract or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of the said Company, and to be by it credited upon any loss, damage, charge and expense * * * sustained or incurred by it" under the bond. The bond also provided for payment to the subcontractor of any over-plus remaining in Century's possession, after its full reimbursement, and that if the subcontractor defaulted in the performance of the contract, Century as surety had the right at its option to proceed, or procure others to proceed, with the performance of the contract.
 
 
 14
 Except for retention payments withheld by the prime contractor in the sum of some $54,000 and paid directly by the prime contractor to Century on December 17, 1954, all progress payments made by the prime contractor under the subcontract were required to be, and were, deposited in this Trust Account. The only job being performed by White-Ahlgren during the entire period in question was the subcontract here involved and at no time did White-Ahlgren receive any funds from another job during this period, although it apparently had some prospects, later proved unfounded, of collecting some money from a previous job which it assigned to Century in May, 1954.
 
 
 15
 White-Ahlgren also had, for at least part of the period in question, a general commercial account at the same bank, with which account Century had no connection.
 
 
 16
 On the same day the Trust Account was opened $25,000 was deposited therein, of which $10,000 was advanced by the prime contractor and $15,000 was a loan to White-Ahlgren by a Mrs. Clausen.
 
 
 17
 This Trust Account continued in existence until December 6, 1954. Although there were some negotiations in March, 1954, indicating that the price contractor was dissatisfied with the subcontractor's work, no final action was taken to supersede the subcontractor and White-Ahlgren continued to perform under the contract, as modified to allow weekly rather than semi-monthly progress payments by Marine, until its completion.
 
 
 18
 About mid-February 1954 White-Ahlgren found it had underbid on the subcontract due to some mistake in estimating the job, and became unable to pay all materialmen and incidental labor in connection with the subcontract, and so notified Century. Century ultimately paid the creditors of White-Ahlgren the total sum of $119,000, made recoveries in connection with its claims asserted under the terms of the bond and indemnity agreement in the amount of some $70,000, leaving a final net loss to Century of some $48,000.
 
 
 19
 Century never paid or advanced any of its own funds to meet the payroll of White-Ahlgren except for $1,090 deposited in the Trust Account in September, 1954, to enable the subcontractor to meet in full its final payroll upon completion of the subcontract. The subcontractor's payrolls were prepared and checks were issued for its employees in the following manner:
 
 
 20
 (a) Beginning with the subcontract, Mrs. Higgins, bookkeeper for the subcontractor, prepared weekly payroll sheets. The foreman delivered the time cards and from them Mrs. Higgins computed the hours, rate of pay, applicable deductions, and the net figure.
 
 
 21
 She then prepared a recap of the total payroll showing each employee's name, hours worked, rate of pay, gross amount due, total tax deductions, and net amount due, and a copy of the payroll recap was furnished to the representative of Century before the checks hereinafter mentioned were countersigned by such representative.
 
 
 22
 (b) For the period between December 7, 1953, and March 8, 1954, a weekly check payable to White-Ahlgren in the gross amount of each weekly payroll was drawn on the Trust Account, signed by an authorized representative of White-Ahlgren and countersigned by Century's representative as trustee and turned over to White-Ahlgren. Between January 12, 1954 and March 8, 1954, a similar check in the net amount of the payroll (gross amount less deductions) was likewise drawn and signed and delivered to White-Ahlgren's general account and checks to the individual employees were drawn from this account by White-Ahlgren. However, by mistake, instead of the individual payroll checks being drawn by White-Ahlgren on its own separate general account as intended in respect of these earlier payments, White-Ahlgren at first drew a number of individual checks on the Trust Account, which were honored by the Bank, although not countersigned by Century's representative as required; 148 such checks in the amount of some $9,600 were so written and paid before this was discovered, the dates being from December 18, 1953, through January 8, 1954; by letter to the Bank dated January 15, 1954, Century's representative ratified the payment of these checks without the required countersignature.
 
 
 23
 (c) Commencing March 9, 1954, and ending with the completion of the subcontract on September 17, 1954, wage payments were made weekly to employees of White-Ahlgren from the Trust Account. These payments were made weekly by means of individual checks drawn against the Trust Account, payable to the order of each individual employee in the net amount due, and each of the checks was signed by an authorized signatory of White-Ahlgren and countersigned by an authorized representative of Century as trustee.
 
 
 24
 The lower court held: (1) that Century was not the "employer" for withholding tax purposes for the first period (December 7, 1953, to March 8, 1954); (2) that for the second period (March 9 to September 17, 1954) Century was the "employer" for purposes of the withholding tax, and was liable therefor.
 
 
 25
 We agree with both parties and with the Treasury Regulations, that when the statute speaks of "control" over the payment of wages, it means legal control. Further, we hold that legal control means legal power to control the actual payment of the wages rather than merely what actually may have been practiced by voluntary forbearance of the person actually having such legal power. Thus, if Century, under the arrangement made, had the legal power to control the actual payment of the wages, then, any other necessary factor being present, it would be the "employer", notwithstanding that, as a practical matter, by voluntary choice, it refrained from exercising control over such payment. Hence we hold that either Century was the "employer" for the entire period in question, or it was not, and that, in holding Century not to be the "employer" for the first part of the period, and to be the "employer" for the latter part of the period, the lower court committed error.
 
 
 26
 This court has already indicated generally its view of the general intent of the legislation here involved in the Simpson[4] and Firemen's Fund[5] cases. See, also, the Phinney[6] case in which the 5th Circuit follows the Simpson case. In the Simpson case, the legislative history of the bill which enacted sec. 1621(d) was adverted to as justifying a strict construction of the exception to the general definition of "employer" contained in sec. 1621(d) (1) and (2).
 
 
 27
 For reasons hereinafter stated, we do not agree with the Director's contentions that the Simpson, Firemen's Fund and Phinney cases are distinguishable on their facts from the present case. For this purpose, it is desirable to elaborate on the historical analysis of section 1621 (d) made in the Simpson case.
 
 
 28
 Section 1621 was first enacted by HR 2570 which became the Act of June 9, 1943, 57 Stat. 126. However, the particular provision in question originated with HR 2218 in the same session (78th Cong. 1st Sess.) which was a bill to enact for the first time a withholding and pay-as-you-go plan for Federal income and other taxes (see 89 Cong.Rec. part 2, pp. 2487-2489). There was no debate on this particular provision relating to withholding procedure and responsibility, the main debate being addressed to the principle of forgiving or not forgiving portions of previously accrued taxes to avoid excessive doubling up. The original version of HR 2218 and various amendments including the Carlson bill embodying the Ruml plan were rejected, and the bill recommitted to the Ways and Means Committee (see 89 Congr.Rec. part 2, pp. 2244, 2278 (H.Rep. 268), 2312 (Minority Rep.), 2487, 2512, 2538-2564, 2576, 2607, 2614-2668, 2742-2772). The definition of "employer" contained in the Carlson amendment (id. pp. 2743, 2744) was contained in both HR 2218 and other proposed versions. It read the same as the House version of HR 2570 (later introduced) as follows:
 
 
 29
 "(d) Employer: The term `employer' means any person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that if the wages paid to an individual are paid by a person other than the person for whom the services are or were performed, the term `employer' (except for the purposes of subsection (a)) means the person paying such wages."
 
 
 30
 The bill having been recommitted (id. pp. 2771-2772), the House Ways and Means Committee came out with a new proposed version in the form of HR 2570 (89 Congr.Rec. part 3, p. 3835). A study of the history of HR 2570 in the Congressional Record indicates that the bill as well as the Robertson-Forand amendment (taken from HR 2577), which was finally adopted as a complete amendment of HR 2570 by the House, all contained the same definition of employer as in HR 2218. (See 89 Congr.Rec. part 3, pp. 3836-3845, 3851, 3860, 3930, 3948, 3957). Hence it is proper to examine the report of the House Ways and Means Committee on HR 2218 (H.Rep.No.268, 78th Cong. 1st Sess., March 19, 1943, p. 10), reading as follows:
 
 
 31
 "PERSONS REQUIRED TO WITHHOLD
 
 
 32
 "Every employer from whom an individual receives wages as the employee of such person is required to withhold and deduct the amount required to be withheld. However, if the wages are paid by a person other than the person for whom the services are or were performed, the person paying the wages is treated as the employer for this purpose. For example, pensions paid by an insurance company to a retired employee of a corporation under a pension plan.
 
 * * * * * *
 
 33
 "DETAILED DISCUSSION OF THE TECHNICAL PROVISIONS OF THE BILL
 
 
 34
 "Collection of tax at source on wages.
 
 
 35
 * * * * * *
 
 
 36
 "Sec. 465(c) and (e) of existing law contains definitions of the terms `withholding agent' and `employer' respectively. Under the bill the definition of withholding agent has been eliminated and the definition of the term `employer' has been broadened to include, in addition to the persons for whom services are performed, persons paying wages for services performed for another. Thus it will include the local agent of a non-resident alien individual, foreign partnership, or foreign corporation paying wages to a citizen or resident of the United States, and the person making payment of wages in situations where neither the wage payment nor the funds from which payment is made are subject to the control of the person for whom the services are performed, as, for instance, in the case of certain types of pension payments.
 
 
 37
 "Sec. 465(d) makes it clear that the responsibility for withholding and paying the tax, filing returns, and furnishing receipts rests with the employer, except as otherwise specifically provided in Sec. 468. In the case of a corporate employer having branch offices, the branch manager or other representative may actually, as a matter of internal administration, withhold the tax or prepare the receipts required under Sec. 469, but the responsibility and legal duty for withholding and paying the tax (including the filing of returns), and furnishing the receipts rests with the corporate employer."
 
 
 38
 Thus it will be seen that even under the original House version, later changed by the Senate to further narrow its scope, the only two examples given by the House Committee of the types of situation intended to be covered by the exception in question, were those of (1) the local agent of a non-resident alien individual, foreign partnership, or foreign corporation paying wages to a citizen or resident of the United States, and (2) pensions paid by an insurance company to a retired employee of a corporation under a pension plan.
 
 
 39
 It should be noted that this report was construing the House version of the bill which did not contain the present paragraph (2) of subsection (d) of Sec. 1621. Furthermore, it should be explained, as hereinafter further shown, that the House version numbered the sections as to withholding beginning with Section 465, intending to place them in the Income Tax system of collection and accounting, whereas the Senate finally renumbered the sections starting with 1621 in order to place them with the Social Security tax system of tax collection and accounting.
 
 
 40
 House Report 401, 78th Cong. 1st Sess., April 30, 1943, of the House Ways and Means Committee relating to HR 2570 (see pp. 1, 2, 7, and 9 thereof) in discussing provisions of HR 2570 identical with those of HR 2218, contains explanatory language practically identical with the above-quoted portions of H.Rept.No. 268. However, when HR 2570 reached the Senate, it was changed in several material respects. Senate Report Number 221 of the same session, May 10, 1943, of the Senate Finance Committee on HR 2570 points out these differences. As to persons required to withhold, after repeating the first sentence of the first above-quoted paragraph from the House Report Number 268, Senate Report 221 says:
 
 
 41
 "However, in certain special cases the person who pays the wages or the person who has control of the payment of the wages is treated as the employer. For example, pensions paid by the fiduciaries of certain pension trusts to retired employees under a pension plan." (emphasis supplied).
 
 
 42
 The Senate Report then discusses subsections (c) and (e) of Section 465 of the existing Code corresponding with the same sections amended by the House bill, and then goes on to explain the changes made by the Senate Committee including renumbering of the sections proposed to be enacted so as to place the withholding provisions in the Social Security tax portions of the Code rather than the Income Tax portions for simplification of operation. The report then says:
 
 
 43
 "Both bills generally define the term `employer' to mean the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person. This general definition is not adequate, however, to cover certain special cases, such as the case where the local agent of a nonresident alien individual, foreign partnership, or foreign corporation pays wages to a citizen or resident of the United States, and the case of the person making payment of wages in situations where the wage payments are not under the control of the person for whom the services are or were performed, as, for instance, the case of certain types of pension payments. The House bill provided for these cases by an exception to the general definition of the term `employer' which provided that if the wages are paid by a person other than the person for whom the services are or were performed, the term `employer' means the person paying such wages. The Committee bill has restated the exception in order to make clear that it is designed solely to meet unusual situations and not intended as a departure from the basic purpose to centralize responsibility for withholding, returning, and paying the tax and furnishing receipts.
 
 
 44
 "Accordingly, the bill provides in section 1621(d) (1) that if the person for whom the services are or were performed does not have control of the payment of the wages for such services, the term `employer' means the person having control of the payment of such wages. Sec. 1621(d) (2) provides that in the case of a person who pays wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, which is not engaged in trade or business within the United States, the term `employer' means the person who pays the wages.
 
 
 45
 "As stated, sec. 1621(d) makes it clear that the responsibility for withholding, paying, and returning the tax and furnishing receipts rests with the employers, except as otherwise specifically provided in sec. 1624. In the case of a corporate employer having branch offices, the branch manager or other representative may actually, as a matter of internal administration, withhold the tax or prepare the receipts required under sec. 1625, but responsibility and legal duty for withholding, paying and returning the tax and furnishing the receipts, rests with the corporate employer."
 
 
 46
 It is obvious from this Senate Report that the Committee felt that the House version was not restrictive enough in its exception from the general definition of "employer," and therefore the Senate adopted the present paragraph (1) of subsection (d) of Section 1621 so as to restrict it to situations similar to pension trust fund withholdings by pension fund trustees who were not the employer, and to other equally limited situations; but it is equally obvious that the Committee wanted to make very sure that a corporate employer having branch offices would still be the "employer" for withholding purposes even though one of its local branch offices, managers, agents, or other representatives might actually do the withholding of the tax, the preparation of the receipts and the paying of the employees. However, to take care of the special situation of a nonresident alien individual, foreign partnership or foreign corporation not engaged in trade or business within the United States, having wages on his or its behalf paid by a local person, instead of leaving this to a broad interpretation of the more general House provision, the Committee inserted paragraph (2) of subsection (d) of 1621, specially providing as follows:
 
 
 47
 "(2) in the case of a person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, the term `employer' (except for the purposes of subsection (a)) means such person."
 
 
 48
 This latter special provision indicates that, where the person who paid the wages was to be the test for determining who was the technical "employer" for withholding purposes, it was to apply only to the special cases noted, with one additional exception noted in the Committee report, next hereinafter noted.
 
 
 49
 To make it unmistakably certain that the responsibility for withholding, paying and returning the tax and furnishing receipts rests with the common law employer (as we will call it) as a general proposition, the Committee Report points out that Sec. 1621(d) as the Committee has redrafted it, has that clear effect "except as otherwise specifically provided in Sec. 1624." (emphasis supplied). Looking at Sec. 1624 we find one other special exception based solely on the payment of the wages, reading as follows:
 
 
 50
 "§ 1624. Return and payment by governmental employer
 
 
 51
 "If the employer is the United States, or a State, Territory, or political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing, the return of the amount deducted and withheld upon any wages may be made by any officer or employee of the United States, or of such State, Territory, or political subdivision, or of the District of Columbia, or of such agency or instrumentality, as the case may be, having control of the payment of such wages, or appropriately designated for that purpose." (emphasis supplied)
 
 
 52
 The Conference Report adopts and repeats in substance the language of the Senate Report above quoted, and includes this statement (Cum.Bull. 1943, p. 1361; U.S.C. Congr.Serv., 78th Cong., 1st Sess. 1943, pp. 2-55):
 
 
 53
 "The change in the Senate bill from a system of collection, payment, and administration based upon the principles applicable to the income tax to a system of collection, payment, and administration based upon the principles underlying the collection of the social-security tax on wages has been made in order to promote efficiency and flexibility in the administration of the tax by the Government and the operations of the employer thereunder. This change, however, does not contemplate any departure from the basic principle that the responsibility and legal duty for withholding and paying the tax, etc., rests with the employer. In view of this basic principle, the Senate bill, in section 1624, retains the provision of the House bill, that if the United States, a State, Territory, or political subdivision, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing is the employer, the return of the tax may be made by the officer or employee having control of the payment of wages or other officer or employee appropriately designated for that purpose." (emphasis supplied).
 
 
 54
 Thus, from the Senate Committee Report, and the Bill as amended by the Senate, which was accepted as to these provisions in the Conference Report, (H.Rept.No.510, on HR 2570, Cum.Bull. 1943, pp. 1351-1353) we find the test of the person paying the wages, for purposes of determining who the "employer" is, controlled by paragraph (2) of subsection (d) of Sec. 1621 and by Sec. 1624; as to all other situations paragraph (1) of said subsection (d) controls. Nothing is said in any of these provisions concerning joint control, but the nearest one to it would be Sec. 1624 which allows the common law employer to designate an agency or instrumentality for the purpose of control, of the payment of such wages, but which restricts its coverage to governmental agencies.
 
 
 55
 It is our view that these House and Senate reports coupled with the report of the Conference Committee quoted in the Simpson case, amply indicate an intent on the part of Congress to impose a narrow construction upon the exceptions of Sec. 1621(d).
 
 
 56
 Joint control of a trust account into which all contract payments are required to be deposited, even from the inception of a contract job as in this case, which still leaves the common law employer in control of all the incidents of employment except the requirement of the concurrence of its bonding surety on checks for withdrawals from such account, does not have the dual effect required by Section 1621(d) (1) of establishing (1) that the contractor "does not have control of the payment of the wages", and (2) that the surety, whose concurrence is required, does have such "control of the payment of such wages." Here, neither has sole control, but neither is the subcontractor without any such control. As stated in the Simpson case, both criteria must be met. Literally, the exception of Section 1621(d) (1) does not cover such a situation. If construction is called for, then it must be in accordance with the legislative intent above indicated, which calls for a narrow construction of the exception, and a broad construction of the general terms covering the common law employer's responsibilities.
 
 
 57
 To hold that an employer, such as White-Ahlgren, can absolve itself from its general responsibilities to withhold the tax, give receipts, account and pay over the tax, etc., by its mere voluntary action of giving its surety joint control over the account into which the job payments are to be made, or to put it another way, to hold that thereby the duty to compute payrolls and tax deductions, give employees receipts, etc., is automatically transferred from the common law employer to the surety company, would not have the effect intended by Congress, as stated in the Conference and Senate reports, supra, of generally maintaining the basic responsibility of the common law employer to make withholdings, etc., and "to promote efficiency and flexibility in the administration of the tax by the government and the operations of the employer thereunder."
 
 
 58
 Moreover the transfer of the withholding, accounting and administration of this tax from the Income-Tax system to the Social Security system as stated in the Senate and Conference reports, is also significant, since, for the purposes of those taxes, the test of the "employer" is that of an ordinary or common law employer, generally, which further supports our view as to the Congressional intent. Even in the instant case the government has acquiesced in the lower court's ruling that Century was not the "employer" for purposes of F.I.C.A. and F.U.T.A. taxes, and that White-Ahlgren was.[7]
 
 
 59
 One further consideration confirming this view might be mentioned. The Simpson, Firemen's Fund and Phinney decisions were all rendered in 1954, being Court of Appeals cases and duly reported. Likewise the American Fidelity Company case, also reported, was decided in 1953. American Fidelity Co. v. Delaney, D.C., Vt. 1953, 114 F.Supp. 702. This situation was therefore well known to the Internal Revenue authorities by 1958 when Congress passed HR 8865 which became the Act of February 11, 1958, Public Law 85-321, 72 Stat. 5, providing for more stringent procedures for collection of the taxes concerned.
 
 
 60
 This Act adds two separate sections, 7512 and 7215, to two separate chapters of the Internal Revenue Act of 1954. There is apparently no congressional debate on the bill so far as is disclosed by the Congressional Record, and no printed hearings thereon. The new Sec. 7512 added by the act provides that "Whenever any person who is required to collect, account for, and pay over any tax imposed by subtitle C or by chapter 33 * * *," fails to do certain things and is notified in a certain manner to comply with the new Act, then certain consequences follow, such as the legal duty to establish a separate trust account, etc. Not only is the Act not made retroactive, but as disclosed by Senate Report 1182, January 23, 1958, which is substantially identical with House Report No. 1006, August 5, 1957, relating to HR 8865, Congress appears to have intentionally failed to broaden by specific inclusion or exclusion, the terms of Sec. 1621(d), although realizing that there would be a substantial number of cases "where there was a reasonable doubt that the law required the collection of the tax or that the person in question was required to collect the tax."
 
 
 61
 The report points out that the present civil penalty of 100% under Sec. 6672 is:
 
 
 62
 "* * * ineffective where the employer has lost the employees' funds in a business venture or where he did not have them in the first place. The latter, which presents one of the most difficult enforcement problems, can be illustrated by a secondary contractor who is without funds, but obtains from the prime contractor just enough to meet his net payroll. The prime contractor in this case, since he is responsible for the completion of the job, is willing to provide the net wage payments, but since he is not the `employer' cannot be required to provide the taxes to be withheld by the `employer.' The secondary contractor who is the `employer,' apart from the net wage payments, does not have any funds in these cases to set aside as withheld taxes." (U.S.C. Congr. & Adm. News, 85th Cong., 2d Sess. 1958 pp. 2187-2188) (emphasis added).
 
 
 63
 The report also points out that the criminal penalty is not completely effective because of the courts' refusal to treat as wilful "those cases where the employer failed to pay over amounts withheld because they used the funds in business ventures which were not successful and no longer had such amounts available to be paid over to the Government." It then goes on to explain that the new bill does not require proof of wilfullness before the criminal penalty provided by that bill applies, but explains that safeguards have been provided so that the bill could not apply to the vast majority of taxpayers since the penalty applies only in cases of failure to make special deposits in a special trust fund and this requirement must be based on notification delivered by hand. It also mentions two more safeguards, namely that the penalty is not to apply "where there was a reasonable doubt that the law required the collection of the tax or that the person in question was required to collect the tax." (emphasis added) (id. 2188-2189).
 
 
 64
 In explaining the technical aspects of the bill in this regard, the report states:
 
 
 65
 "Thus, the penalty would not apply, for example, in the case of the employment taxes where the person whose status is questioned shows that there was reasonable doubt as to whether he was an employer or engaged in a contract with an independent contractor. * * *" (p. 2191)
 
 
 66
 The foregoing indicate Congressional approval of the general principles set forth in the Simpson case, although that case is not specifically referred to. Joint control, in effect, existed in the Phinney case, though not from the inception of the job. Surely, if there was an intent to make a distinction based upon such joint control, one would have expected some mention thereof in a report approving the principles of the Simpson case which had been followed in the Phinney case.
 
 
 67
 The bankruptcy trustee cases, such as the Fogarty,[8] Curtis,[9] and Daigle[10] cases, are clearly distinguishable on grounds stated in the Phinney case. For the same reason, although relied upon by the court below, these decisions were not mentioned in the Firemen's Fund case. As indicated in the Phinney case, the justification for the bankruptcy trustee rulings is that a trustee in bankruptcy is the alter ego, and steps into the shoes, of the employer, assuming by law all of his pre-existing obligations with limited exceptions not relevant here. This is no different in principle from a holding that the executor or administrator of a deceased individual employer's estate, or the trustee on dissolution of a corporate employer, would have a similar obligation to pay such employer's tax and other obligations. The same situation does not exist in the case of Century, for even if it can be argued that Century took over all assets of White-Ahlgren in the same sense (which is doubtful) there is nothing in the record to justify a finding that Century thereby automatically assumed all of White-Ahlgren's pre-existing obligations.
 
 
 68
 Finally two departmental rulings are relied upon by the Director as allegedly supporting his position that "It is not significant for purposes of this exception" (Section 1621(d) (1)) "who controls and performs the tasks of preparing the payroll sheets or making out the payroll checks": Rev.Rul. 57-22, 1957-1 Cum.Bull. 318; and Rev.Rul. 54-471, 1954-2 Cum.Bull. 348. Besides other possible grounds of distinction, we suggest that each of these rulings (none of which cites or appears to consider any of the reported decisions above mentioned) could more properly have been based solely upon the express provisions of 26 U.S.C.A. Sec. 1624, quoted in note 2 ante, than upon any broad construction of Sec. 1621(d) (1) as the Director here appears to contend.
 
 
 69
 For the foregoing reasons, the judgment (1) insofar as it holds that Century was not the "employer" for the first period above mentioned and therefore is entitled to a partial refund with interest, is affirmed; and (2) insofar as it holds that Century was the "employer" for the second period and therefore is not entitled to a refund of the remaining amounts and interest sued for, is reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The applicable sections are as follows:
 1939 I.R.C., § 1621, as added by Sec. 2(a) of the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, found in 26 U.S.C.A. 1955 ed., § 1621, reading:
 "Definitions
 "As used in this subchapter
 * * * * *
 "(d) Employer. The term `employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that —
 "(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term `employer' (except for the purposes of subsection (a)) means the person having control of the payment of such wages; and
 "(2) in the case of a person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, the term `employer' (except for the purposes of subsection (a)) means such person."
 Id. Sec. 1622, as added by the same Act, and as amended by Sec. 501 of the Rev. Act of 1948, c. 168, 62 Stat. 110, Sec. 141 of the Rev. Act of 1950, c. 994, 64 Stat. 906, and Sec. 201 of the Rev. Act of 1951, c. 521, 65 Stat. 452, found in 26 U.S.C.A. 1955 ed., § 1622(a), reading:
 "Income tax collected at source
 "(a) Requirement of withholding. Every employer making payment of wages shall deduct and withhold upon such wages a tax equal to 18 per centum of the amount by which the wages exceed the number of withholding exemptions claimed multiplied by the amount of one such exemption as shown in subsection (b) (1), except that in the case of wages paid on or after November 1, 1951, and before January 1, 1954, the tax shall be equal to 20 per centum of such excess in lieu of 18 per centum. * * *"
 Id. Sec. 1623, as added by the same Act, found in 26 U.S.C.A. 1955 ed., § 1623, reading:
 "Liability for tax
 "The employer shall be liable for the payment of the tax required to be deducted and withheld under this sub-chapter, and shall not be liable to any person for the amount of any such payment."
 Id. Sec. 1624, as added by the same Act, found in 26 U.S.C.A. 1955 ed., § 1624, reading:
 "Return and payment by governmental employer
 "If the employer is the United States, or a State, Territory, or political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing, the return of the amount deducted and withheld upon any wages may be made by any officer or employee of the United States, or of such State, Territory, or political subdivision, or of the District of Columbia, or of such agency or instrumentality, as the case may be, having control of the payment of such wages, or appropriately designated for that purpose."
 We accept, for the purposes of this case, the Director's statement as to the applicable Treasury Regulations set forth in Appendix A of his brief, reading:
 "Treasury Regulations 120 (1939 Code):
 "SEC. 406.205. Employer —
 "(a) The term `employer' means any person for whom an individual performs or performed any service, of whatever nature, as the employee of such person.
 "(b) It is not necessary that the services be continuing at the time the wages are paid in order that the status of employer exist. Thus, for purposes of withholding, a person for whom an individual has performed past services for which he is still receiving wages from such person is an `employer.'
 "(c) If the person for whom the services are or were performed does not have legal control of the payment of the wages for such services, the term `employer' means (except for the purpose of the definition of `wages') the person having such control. For example, where wages, such as certain types of pensions or retired pay, are paid by a trust and the person for whom the services were performed has no legal control over the payment of such wages, the trust is the `employer.'
 "(d) The term `employer' also means (except for the purpose of the definition of `wages') any person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States (including Puerto Rico as if a part of the United States).
 "(e) It is a basic purpose to centralize in the employer the responsibility for withholding, returning, and paying the tax and furnishing the statements required under section 1633. The foregoing two special definitions of the term `employer' are designed solely to meet unusual situations. They are not intended as a departure from the basic purpose.
 "(f) An employer may be an individual, a corporation, a partnership, a trust, an estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization, group, or entity. A trust or estate, rather than the fiduciary acting for or on behalf of the trust or estate, is generally the employer.
 "(g) The term `employer' embraces not only individuals and organizations engaged in trade or business, but organizations exempt from income tax, such as religious and charitable organizations, educational institutions, clubs, social organizations and societies, as well as the governments of the United States, the States, Territories, Puerto Rico, and the District of Columbia, including their agencies, instrumentalities, and political subdivisions."
 Treasury Regulations 120 apply only to the year 1954. Section 405.105 of Treasury Regulations 116 (1939 Code) which is applicable to the fourth quarter of 1953, also here involved, is in all essential respects the same as Section 406.205 of Treasury Regulations 120.
 
 
 [2]
 The applicable sections are as follows:
 1939 I.R.C., § 1621, as added by Sec. 2(a) of the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, found in 26 U.S.C.A. 1955 ed., § 1621, reading:
 "Definitions
 "As used in this subchapter
 * * * * *
 "(d) Employer. The term `employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that —
 "(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term `employer' (except for the purposes of subsection (a)) means the person having control of the payment of such wages; and
 "(2) in the case of a person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, the term `employer' (except for the purposes of subsection (a)) means such person."
 Id. Sec. 1622, as added by the same Act, and as amended by Sec. 501 of the Rev. Act of 1948, c. 168, 62 Stat. 110, Sec. 141 of the Rev. Act of 1950, c. 994, 64 Stat. 906, and Sec. 201 of the Rev. Act of 1951, c. 521, 65 Stat. 452, found in 26 U.S.C.A. 1955 ed., § 1622(a), reading:
 "Income tax collected at source
 "(a) Requirement of withholding. Every employer making payment of wages shall deduct and withhold upon such wages a tax equal to 18 per centum of the amount by which the wages exceed the number of withholding exemptions claimed multiplied by the amount of one such exemption as shown in subsection (b) (1), except that in the case of wages paid on or after November 1, 1951, and before January 1, 1954, the tax shall be equal to 20 per centum of such excess in lieu of 18 per centum. * * *"
 Id. Sec. 1623, as added by the same Act, found in 26 U.S.C.A. 1955 ed., § 1623, reading:
 "Liability for tax
 "The employer shall be liable for the payment of the tax required to be deducted and withheld under this sub-chapter, and shall not be liable to any person for the amount of any such payment."
 Id. Sec. 1624, as added by the same Act, found in 26 U.S.C.A. 1955 ed., § 1624, reading:
 "Return and payment by governmental employer
 "If the employer is the United States, or a State, Territory, or political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing, the return of the amount deducted and withheld upon any wages may be made by any officer or employee of the United States, or of such State, Territory, or political subdivision, or of the District of Columbia, or of such agency or instrumentality, as the case may be, having control of the payment of such wages, or appropriately designated for that purpose."
 We accept, for the purposes of this case, the Director's statement as to the applicable Treasury Regulations set forth in Appendix A of his brief, reading:
 "Treasury Regulations 120 (1939 Code):
 "SEC. 406.205. Employer —
 "(a) The term `employer' means any person for whom an individual performs or performed any service, of whatever nature, as the employee of such person.
 "(b) It is not necessary that the services be continuing at the time the wages are paid in order that the status of employer exist. Thus, for purposes of withholding, a person for whom an individual has performed past services for which he is still receiving wages from such person is an `employer.'
 "(c) If the person for whom the services are or were performed does not have legal control of the payment of the wages for such services, the term `employer' means (except for the purpose of the definition of `wages') the person having such control. For example, where wages, such as certain types of pensions or retired pay, are paid by a trust and the person for whom the services were performed has no legal control over the payment of such wages, the trust is the `employer.'
 "(d) The term `employer' also means (except for the purpose of the definition of `wages') any person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States (including Puerto Rico as if a part of the United States).
 "(e) It is a basic purpose to centralize in the employer the responsibility for withholding, returning, and paying the tax and furnishing the statements required under section 1633. The foregoing two special definitions of the term `employer' are designed solely to meet unusual situations. They are not intended as a departure from the basic purpose.
 "(f) An employer may be an individual, a corporation, a partnership, a trust, an estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization, group, or entity. A trust or estate, rather than the fiduciary acting for or on behalf of the trust or estate, is generally the employer.
 "(g) The term `employer' embraces not only individuals and organizations engaged in trade or business, but organizations exempt from income tax, such as religious and charitable organizations, educational institutions, clubs, social organizations and societies, as well as the governments of the United States, the States, Territories, Puerto Rico, and the District of Columbia, including their agencies, instrumentalities, and political subdivisions."
 Treasury Regulations 120 apply only to the year 1954. Section 405.105 of Treasury Regulations 116 (1939 Code) which is applicable to the fourth quarter of 1953, also here involved, is in all essential respects the same as Section 406.205 of Treasury Regulations 120.
 
 
 [3]
 Some of the written instructions to the Bank and signature cards executed in connection with the opening and operation of this Trust Account, could be literally construed as authorizing monies to be withdrawn from this Trust Accounteither on two signatures (one each in behalf of White-Ahlgren and Century) or solely upon one signature of an attorney-in-fact of Century. However, after a careful consideration of the following:
 (a) all of the signature cards in connection with the original written "resolution" (as the banker, Mr. Frazier called it) being a document entitled "Instructions to Security Trust and Savings Bank of San Diego" (Ex. B in evidence, and Ex. C attached to the Frazier deposition (Ex. I));
 (b) the original letter of November 16, 1953, wherein Century committed itself to write the bond upon compliance with certain conditions including establishment of the Trust Account "of which we as surety will have joint control";
 (c) the actual construction in practice of these documents by the parties;
 (d) other evidence including the testimony of the banker, Mr. Frazier, and
 (e) the pretrial order, and the contentions of the parties, as shown by the record, including the Director's "Objections to Plaintiff's Proposed Findings of Fact, Conclusions of Law and Judgment" (Record pp. 74 to 79) and the briefs,
 we feel that the ruling of the court below, that this was a joint account is supported by substantial evidence, and that we are not at liberty to reverse that finding.
 Therefore, we proceed on the basis that the Trust Account was a joint account requiring such joint signatures, that is, one signature in behalf of White-Ahlgren and one signature in behalf of Century, to make withdrawals.
 
 
 [4]
 Westover v. William Simpson Const. Co. (C.A.9 1954), 209 F.2d 908
 
 
 [5]
 Firemen's Fund Indemnity Co. v. United States (9th Cir., 1954), 210 F.2d 472
 
 
 [6]
 Phinney v. Southern Warehouse Corp. (C.A.5 1954). 212 F.2d 488
 
 
 [7]
 See, also, note 4 to Westover v. William Simpson Const. Co. (9 Cir., 1954), 209 F.2d 908, 910
 
 
 [8]
 United States v. Fogerty (8 Cir., 1947), 164 F.2d 26, 174 A.L.R. 1284
 
 
 [9]
 United States v. Curtis, (6 Cir., 1949), 178 F.2d 268
 
 
 [10]
 In re Daigle (S.D.Me.1953), 111 F. Supp. 109