**ARTHUR VENNERI COMPANY**

v.

**The UNITED STATES.**

No. 412-60.

United States Court of Claims.

Jan. 22, 1965.

Rehearing Denied April 16, 1965.

Gael Mahony, Boston, Mass., for plaintiff. Hill, Barlow, Goodale & Adams, Boston, Mass., of counsel.

Mitchell Samuelson, Washington, D. C., with whom was Asst. Atty. Gen., Louis F. Oberdorfer, for defendant. C. Moxley Featherston, Lyle M. Turner and Philip R. Miller, Washington, D. C., were on the brief.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

COWEN, Chief Judge.

Plaintiff, Arthur Venneri Company (hereinafter generally referred to as Venneri) sues for refund of income tax withholdings, Federal insurance contribution taxes (FICA) and Federal unemployment compensation taxes (FUTA) paid for the tax year 1954 and for a portion of the tax year 1955. The taxes were assessed on the wages received by employees of the George B. Landers Construction Co., Inc. (hereinafter referred to as Landers), a subcontractor of Venneri.

In 1954, Venneri, a New Jersey corporation, was engaged in construction work under five contracts with the Army Corps of Engineers at an air base in New Hampshire. As Venneri's subcontractor, Landers agreed to furnish all the labor, material, and equipment required to perform the excavation and related work called for under Venneri's five general contracts. The subcontracts also specified that Landers would bear the liability "for any contributions for unemployment social security, or other insurance covering the [Landers] employees * * *."

Shortly after Landers began work under the subcontracts, it became apparent that Landers was in financial difficulty and would be unable to meet its payroll and other obligations as they arose. In order to enable Landers to perform its subcontracts, Venneri and Landers made a financing arrangement to provide Landers with advance payments of the sums which would become due under its several subcontracts. In a special bank account which was opened for this purpose, Venneri deposited funds which were to be used by Landers to pay only those obligations arising directly under the subcontracts. Venneri did not make any wage payments to Landers' employees, and Landers continued as before to prepare its payroll and disburse the wages due. Checks signed by a Venneri representative were drawn upon the special account for payroll and other expenses incurred by Landers in performing the contracts. The payroll checks were issued in the net amounts due after deducting all Federal and State taxes. Landers did not make payment to the Government for such taxes withheld or deducted.

In connection with the financing arrangement, Venneri and Landers executed rider agreements which became a part of the subcontracts. The riders, a typical copy of which is set out in the findings of fact, provided in substance that Venneri would advance money to Landers prior to the dates that Venneri was obligated to pay Landers under the subcontracts and that Landers would

share any profits earned on the subcontracts equally with Venneri; Landers also agreed to perform certain additional work without extra charge. Except for these conditions, the subcontracts remained unchanged.

On February 9, 1955, Venneri terminated the subcontracts because of Landers' alleged failure to comply with specified terms and conditions of the subcontracts.

On or about May 2, 1956, the District Director for the Internal Revenue District of New Hampshire made a levy in the amount of $14,962.25 against Venneri and Landers for alleged nonpayment of income and FICA taxes withheld for the last two quarters of 1954 and the first quarter of 1955 and nonpayment of FUTA taxes withheld for the year 1954. On May 9, 1956, Venneri paid the full amount of the levy, and thereafter filed timely claims for refund. Upon denial of the claims, the present suit followed.

The sole issue for our determination is whether Venneri was the employer, as that term is defined in the taxing statutes, of Landers' employees during the period in question.

■■ Whether one is the employer of another for purposes of the FICA and FUTA taxes depends on the degree of control exercised over or the right to control the activities of the alleged employees. Edwards v. United States, 168 F.Supp. 955, 144 Ct.Cl. 158 (1958). We have held that the determination of the existence of such a relationship is to be made only after a realistic consideration of all the factors involved. Cutler v. United States, 180 F.Supp. 360, 148 Ct.Cl. 537 (1960). Defendant argues that the "explicit terms of the contracts and rider agreements" are "clear and convincing evidence that the taxpayer, both before and after the execution of the riders, had the right to control the daily operations of Landers Company's personnel." The defendant has pointed to certain provisions of the subcontracts, which when viewed apart from the basic purposes for which the agreements were made and the circumstances under which they were executed, lend apparent support to defendant's position.

■ The terms of the subcontracts are set forth in our findings of fact and will not be repeated in detail here. Landers was required to furnish all the labor and equipment for the work covered in the subcontracts in consideration of the payment of a fixed fee. Venneri had no right to hire or fire any of the subcontractors' employees. Although Venneri had the right to direct Landers as to the number of men it would employ on the job, it is clear that this provision was inserted to assure Venneri that the work would be completed within the time required by the prime contract rather than to grant Venneri control over the details of how the work would be performed. In Article VII of each subcontract, provision was made for Venneri's superintendent to give orders directly to Landers' foremen and employees, but the other terms of this article show that the contractor's right to give such directions was for the purpose of facilitating the orderly prosecution of the contract work, to avoid delay and interference to other trades on the job, and to make certain that the subcontracts would be completed within the time fixed by the general contract. All of the subcontracts were on standard forms that Venneri used in its various construction projects. The provisions of the subcontracts are similar to those which are often found in subcontracts executed in connection with Government construction projects and are included to insure the prime contractor that the work will be accomplished within the time and in accordance with the requirements of the general contract. The authorities cited by defendant do not support its contention in such a contractor-subcontractor relationship. Subcontractors, like physicians, lawyers, and contractors, are generally regarded as independent contractors and not as employees.[1]

---

1. See Treasury Regulations (1939) Code: 106 § 402.204; 107 § 403.204; 120 § 406.203.

■ However, defendant places special emphasis on the rider agreements by which, as Commissioner Arens found, "Venneri, through its assistant project manager, and/or a supervisor, exercised closer supervision over Landers' work." The commissioner characterized such supervision as including "ordering Landers regarding the work to be done, where it was to be done, and how many men Landers was to use on certain jobs." He noted that "George B. Landers continued at the jobsite, however, in the capacity of supervisor for Landers." In view of the financial difficulties encountered by Landers and the advance of funds by Venneri, it was to be expected that the latter would exercise a greater degree of control over the work than before. However, in our opinion, the evidence as a whole shows that the additional supervision on the part of Venneri was directed toward the results to be accomplished rather than toward the means and methods for accomplishing the result. Consequently, the rider agreements did not change the relationship between Venneri and Landers so as to make Venneri liable for the payment of the taxes involved here. Bartels v. Birmingham, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947) and Cutler v. United States, supra, each involved operators of nightclubs and organizers of social events who contracted with bandleaders for bands to play at these functions. The contracts expressly provided that the operators were to have complete control at all times of the services to be performed under the contracts. In Cutler, the operators specified the services to be performed, the locations where the work was to be done, and the number of men the bandleader was to use on particular programs, plus the type of music to be used and its tempo, as well as the physical location of the musicians. In each case, it was held that the bandleader was an independent contractor and that he, rather than the operator, was the employer of the musicians. As stated in Cutler v. United States, supra, "[t]his type of control pertains to the service to be rendered and does not give control over the method of rendering it." See also United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L. Ed. 1757 (1947). We think the rationale of these cases applies here for the purpose of determining Venneri's liability for the payment of the FICA and FUTA taxes. With respect to such taxes, therefore, we hold that Landers was an independent contractor and, *a fortiori*, its employees were not the employees of Venneri.

■ In determining who is an employer for the purposes of the withholding tax, a different criterion is used. In a series of decisions by the Ninth and Fifth Circuits, it has been held that the employer is one who has exclusive control of the payment of the wages. Westover v. William Simpson Construction Co., 209 F.2d 908 (9th Cir.1954); Firemen's Fund Indemnity Co. v. United States, 210 F.2d 472 (9th Cir.1954); Century Indemnity Co. v. Riddell, 317 F.2d 681 (9th Cir. 1963) and Phinney v. Southern Warehouse Corp., 212 F.2d 488 (5th Cir.1954). These decisions rest upon the provisions of 26 U.S.C. (I.R.C.1939) § 1621(d) (1952 Ed.).[2]

■■ In the rider agreements here in issue, it was Landers rather than Venneri who made up the payrolls, determined who was to be paid wages, and designated the amount to be paid in each instance. The fact that Venneri supplied the funds for the payroll is not sufficient to make it the employer. Westover v. William Simpson Construction Co., supra,

2. Section 1621(d) provides:
    "*Employer*. The term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—
    "(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term 'employer' (except for the purposes of subsection (a)) means the person having control of the payment of such wages; * * *."
The provisions of Section 3401(d) of the 1954 Code are the same.

209 F.2d at 911. Furthermore, the restriction of the funds advanced by Venneri to the payment of wages and expenses arising out of the subcontracts did not give Venneri sole control of the payment of the wages, for, as the court found in Phinney v. Southern Warehouse Corp., *supra*, 212 F.2d at 490, "The advances were made in the manner stated to insure that they would be applied to the payment of material and labor bills and not be diverted * * *."

■ Venneri had no voice in the matter of who would be employed by Landers or at what wage. Venneri hired no one for Landers nor did Venneri fire any of Landers' employees.

Since it is altogether clear that Venneri did not have sole control over the payment of the wages, Venneri was not an employer within the meaning of section 1621(d).

As its second defense, defendant argues that since Venneri was to share in the profits on the subcontracts, Venneri was a joint venturer with Landers and therefore a co-employer of Landers' employees. Thus, since Landers cannot pay the taxes, defendant asserts that Venneri should pay them.

■ In its brief, defendant has set forth several criteria for a determination of the existence of a partnership or joint venture for the purposes of Federal taxation, as outlined in Barrett and Seago Partners and Partnerships, Law and Taxation, section 10, page 98. A discussion of these criteria, to the extent that they are pertinent here, will demonstrate that a joint venture did not, in fact, exist in this instance.

1. *The partners must either contribute services or have capital invested in the business in the taxable year in question.* The money deposited by Venneri in the bank account pursuant to the rider agreements was not a contribution of capital but an advance of funds which would be due Landers as it completed its work. Upon the termination of the subcontracts, Venneri had the right to recoup funds which it had advanced but which Landers had not, in fact, earned. Thus, the relationship between them was that of creditor and debtor. There was no capital investment by Venneri.

2. *Sharing of the profits amongst all the partners.* The provision for Venneri to share in the profits here was made manifestly as a consideration for its advance of funds to be earned by Landers under the subcontracts. It was not the sharing of profits that is normally contemplated when two persons contribute their property, money, efforts, skill and knowledge in some common undertaking. An almost identical situation was before the court in Myers v. St. Louis Structural Steel Co., 333 Mo. 464, 65 S.W.2d 931 (1933). In that case, it appears that after the subcontractor found himself in financial difficulties, he and the general contractor entered into a new agreement, which provided: (1) the general contractor was to advance funds to the subcontractor; (2) the general contractor was to participate in the subcontractor's profits to a stated extent when and as profits were earned, and (3) the general contractor was to exercise supervision over the amounts advanced by him. In holding that no joint venture existed, the court stated that the purpose of the arrangement was to make a profit but to keep the subcontractor on the job, and that the provisions regarding the supervision of the funds advanced were of the type that are commonly made pending repayment of funds lent in the progress of construction work.

3. *Sharing of losses and personal liability for such losses that may be sustained by the business.* Surely the defendant would not suggest that Venneri is indebted to Landers' general creditors for debts resulting from the loss sustained by Landers on the terminated subcontracts. There is, of course, no provision in the rider agreements for the sharing by Venneri of any losses whatsoever. Thus, the "community of interest in profits and losses," which the Supreme Court in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1946) designated as the distinguishing feature

of a joint venture in Federal tax cases, is absent in this case. The existence of a creditor-debtor relationship between Venneri and Landers negates the existence of a joint venture in which both partners are to share in the losses.

4. *Common management and control of the business by the partners.* In its contention with respect to the FICA and FUTA taxes, defendant would have Venneri in sole control of Landers and all of its employees but, in arguing that a joint venture was formed, defendant is forced to redistribute that control jointly. For the reasons previously set forth above, we find that the element of equal right of control is also lacking here. Both in the subcontracts and in the riders, Landers reserved the right to hire and fire all of its employees. There is no evidence that any person was ever employed by Venneri for work on the Landers' subcontracts. The equipment and facilities needed for the performance of the subcontracts were owned or rented by Landers. There was no joint ownership of the instrumentalities and subject matter of the enterprise. Venneri paid Landers for the use of office space in a building owned by Landers. When Venneri's employees, using Venneri equipment, performed any part of the work called for under the Landers' subcontracts, Venneri charged Landers for the full amount of the expense, including labor, materials, and overhead.

In Barrett and Seago's text, there are discussions of other factors to be considered in determining the existence of a joint venture. We need not refer to any other factors, however, because we are convinced that the facts of this case do not establish the presence of the two elements which are essential to constitute a joint venture—sharing of the losses and joint control of the property of the venture. Backus Plywood Corp. v. Commercial Decal, Inc., 208 F.Supp. 687 (S.D.N.Y.1962); aff'd as modified, 317 F. 2d 339 (2d Cir.1963), cert. denied, 375 U. S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963).

In summary, we hold that Landers maintained its status as an independent contractor and that Venneri was not the employer of Landers' personnel for Federal tax purposes during the period in suit. We arrive at this conclusion after a consideration of the applicable statutes, the language of the subcontracts and riders, the circumstances under and the purposes for which these agreements were executed, and the actions of Venneri and Landers in carrying out such agreements. As the Supreme Court said in Bartels v. Birmingham, supra, "[i]t is the total situation that controls."

Judgment will be entered for plaintiff on the first claim alleged in its petition; the amount of recovery is to be determined pursuant to Rule 47(c). The petition is dismissed as to the second and third claims thereof.