IN THE MATTER OF THE VOLUNTARY DISSOLUTION OF KANTOR BROTHERS, INC., A CORPORATION OF THE STATE OF NEW JERSEY.

ANDREW B. CRUMMY, STATUTORY RECEIVER, ETC., PLAINTIFF-APPELLANT, v. DISTRICT DIRECTOR OF INTERNAL REVENUE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 4, 1966—Decided April 28, 1966.

122

Before Judges CONFORD, KILKENNY and LEONARD.

*Mr. Andrew B. Crummy* argued the cause for plaintiff-appellant (*Messrs. Crummy, Gibbons & O'Neill,* attorneys).

*Mr. Matthew J. Scola,* Assistant United States Attorney, argued the cause for defendant-respondent (*Mr. David M. Satz, Jr.,* United States Attorney; *Mr. Joseph F. Kelly, Jr.,* Assistant United States Attorney, on the brief).

PER CURIAM. We conclude that the trial court was correct in denying the statutory receiver's motion to expunge the amended claim of the United States of America for federal income taxes of employees withheld but not paid during the period of September 9, 1960 to March 24, 1961.

The stipulated facts are as follows: On October 5, 1959 Terminal Construction Corporation (Terminal) contracted with the Government to construct a housing project at

McGuire Air Force Base. As prime contractor it then entered into an agreement with a joint venture comprised of T & M Plumbing Co., which was to supply the labor; Kantor Bros., Inc., which was to supply the material; and the principals of T & M Plumbing Co. The joint venture was to be called T & M McGuire (McGuire). Financing for this joint venture was to be arranged through the National State Bank of Newark, New Jersey, now named First National State Bank (bank). On or about October 30, 1959 work on the site was commenced. As of September 1960 the bank had advanced the sum of $334,000 to McGuire. On September 7, 1960 Terminal advised the bank that it would not meet McGuire's payroll due two days later, and that unless the bank met the same Terminal would default McGuire's subcontracts and take over the work. For this reason, and further, because Terminal disputed the validity of an assignment held by the bank from McGuire as collateral for its loans, the bank decided to make payments to McGuire in a different manner to protect its existing investment.

Commencing on September 9, 1960 the bank, in order to satisfy payroll requirements at the site, received a worksheet prepared by McGuire indicating how much was due each worker. The bank would then prepare the payroll envelopes which were taken to the work site by one of its assistant vice-presidents. There the bank arranged to have every person on the payroll execute an assignment to it of the wages due him. The pay envelopes were released to the individuals as they returned these executed assignments. In the event a worker was not present on any payday, it was agreed that he would go to the bank in Newark to execute an assignment and receive his envelope. In return for the executed assignments, the bank gave each employee on the payroll his pay envelope containing his *net wages*. This procedure continued from September 9, 1960 to March 24, 1961. Each week the bank received a certification that the payroll schedules presented to it represented a bona fide debt of McGuire for work performed by each person listed therein.

It was also stipulated that during this period of time McGuire had complete control over the performance of the work, including the hiring, firing and supervision of the workers on the site.

Under the applicable sections of the Internal Revenue Code (1954) "[e]very employer making payment of wages shall deduct and withhold upon such wages a tax," 26 *U. S. C. A.* §3402, and the employer is liable "for the payment of the tax," 26 *U. S. C. A.* §3403. An employer is defined therein as "the person for whom an individual performs or performed any service * * * as the employee of such person, except that —(1) if the person * * * *does not have control of the payment of the wages for such services, the term "employer"* * * * *means the person having control of the payment of such wages,"* 26 *U. S. C. A.* §3401 (d) (emphasis added).

While the Code makes the criterion for determining the "employer" the "control of the payment of the wages," it is noted that the federal statute contains no definition or amplification of the meaning of that clause. However, the federal courts on numerous occasions have construed it in situations similar to the one at bar. "Control" has been defined to mean the power to control the actual payment of wages. *Century Indemnity Co. v. Riddell,* 317 *F. 2d* 681 (9 *Cir.* 1963). Something more than the mere supplying of money for payroll is essential. *Westover v. Simpson,* 209 *F. 2d* 908 (9 *Cir.* 1954). The test is who makes up the payroll, who determines the employees to be included therein, and who determines the amount they are to be paid. *Arthur Venneri Co. v. U. S.,* 340 *F. 2d* 337, 169 *Ct. Cl.* 74 (1965); *Phinney v. Southern Warehouse Corp.,* 212 *F. 2d* 488 (5 *Cir.* 1954). See also *Firemen's Fund Indemnity Co. v. U. S.,* 210 *F. 2d* 472 (9 *Cir.* 1954).

Applying the foregoing principle to the facts herein, Kantor Brothers, Inc. (part of the joint venture) was the "employer" and the bank was not. Thus under the previously cited sections of the Internal Revenue Code, it and

not the bank was liable for the tax, and the Government's claim against it, filed with the statutory receiver, was correctly allowed by the trial court.

Affirmed.