19466

CLEMSON ASSOCIATES, INC., Appellant, v. William A.
ROBINSON, JR., et al., Respondents

(190 S. E. (2d) 788)

*J. D. Todd, Jr., Esq.,* of *Leatherwood, Walker, Todd &*
*Mann,* of Greenville, *for Appellant*

*Messrs. John T. Gentry,* and *Felix L. Finley, Jr.,* of
Pickens, *for Respondents,*

August 7, 1972.

*Per Curiam.*

This action at law was by consent referred to a special referee whose report will be published herewith. The referee's findings of fact and conclusions of law were adopted and confirmed in their entirety by a decree of the circuit court.

After a careful review of the record, appellant's exceptions and the briefs, we are unconvinced of any prejudicial error below. The judgment of the lower court is, accordingly,

Affirmed.

## SPECIAL REFEREE'S REPORT

\* \* \*

From the record before me, I submit the following as my findings of fact and conclusions of law:

## FINDINGS OF FACT

Several years prior to August 1, 1968, the school properties of Pickens County School District A located in the Town of Clemson were severely damaged by fire. The destroyed portions of the properties were not rebuilt. Following the fire, some portions of the properties were useable for school purposes and were used by the District for such purposes to May 27, 1969.

After the fire, the Trustees of the School District were undecided as to whether the destroyed properties should be rebuilt or the properties as they stood should be sold and a new site purchased and a new school constructed. Faced with the problem of reaching a decision in the matter, the Trustees employed Mr. Wilkins Norwood to make an appraisal of the property. In his report he states, among other things, the following:

"Highest and best use of subject (the school properties) is considered to be service station site on corner and commercial such as motel site or shopping center on remainder. * * * Based on my knowledge of sales to major oil companies at similar intersections in the general area, I estimate market value of this site to be $300.00 per front foot. * * * I estimate frontage on College Avenue to have a market value of $225.00 per front foot.

150 front feet at intersection, @ $300.00=$ 45,000.00

400 front feet on U. S. 123, @ $175.00=  70,000.00

550 front ft. on College Ave., @ $225.00= 123,750.00

Total Estimate ..................... $238,750.00

"After applying the methods and techniques recommended by the American Institute of Real Estate Appraisers, and after analyzing the data presented, I estimate the market value of subject site as of January 4, 1965 to be $238,-750.00."

Quite some time later the Trustees decided to offer the properties for sale and around August 1, 1968, requested the consent of the Pickens County Board of Education for the sale of the properties.

On August 1, 1968, the said Board took official action on the request at a meeting with a majority of its members present. The minutes of the meeting show that the Board gave its conditional consent to the sale, the condition being that the sales price of the properties would be Two Hundred Twenty-Five Thousand and No/100 ($225,000.00) Dollars.

Notwithstanding the consent price fixed by the County $18,000.00"

Board of Education, the Trustees advertised the properties for sale in newspapers and in circulars sent realtors in the area at a price of Two Hundred Thousand and No/100

(\$200,000.00) Dollars, the advertisement reading in part, as follows:

"Pickens County School District A offers for sale as commercial property approximately seven acres in the Town of Clemson, South Carolina, located on College Avenue and Highway 123. * * * The School District would like to net at least \$200,000.00 after all fees and costs have been paid."

On September 23, 1968, Mr. James V. Patterson submitted to the Trustees in writing an offer to purchase the properties along with a deposit of Two Thousand and No/100 (\$2,000.00) Dollars, the offer reading in part as follows:

"We hereby agree to purchase the property known as Pickens County School District A property in the town of Clemson * * * and agree to pay the sum of \$201,000.00 for said property on the following terms, \$20,000 as down payment on Contract for Sale, the balance of purchase price to be paid on June 1, 1969. The seller shall have the right to occupy said property until June 1, 1969. * * * The said Contract for Sale shall be closed within 30 days from date of acceptance of this offer."

At the foot of the Offer to Purchase, the following entry appears:

"The foregoing offer is hereby accepted by us this 26 day of September, 1968.

> Pickens County School Dist. "A" by
> s/Curtis A. Sidden,
> *Superintendent.*

Witness s/J. C. Brice"

The foregoing acceptance of the offer by the Trustees of the School District was made without the consent of the Pickens County Board of Education.

Thereafter, on November 20, 1968, a portion of the school properties was damaged by fire.

Two days later, Mr. James V. Patterson paid the School District Eighteen Thousand and No/100 ($18,000.00) Dollars and a receipt was issued for the payment by Pickens County School District A by Emily G. Callaham, reading:

"November 22, 1968

*Received Of* James V. Patterson Eighteen Thousand and No/100 Dollars. Balance of Contract Binder—Clemson.

Pickens County School Dist. "A"
s/ EMILY G. CALLAHAM.

$18,000.00."

The School District carried insurance on the properties with the State Sinking Fund Commission. The Commission paid the District Thirty-Six Thousand Four Hundred and No/100 ($36,400.00) Dollars for the damage to the building. The District had to provide school rooms in place of the destroyed ones and spent more than it received from the State Sinking Fund Commission for portable classrooms. With the purchased classrooms, the District was able to continue to operate the school until the end of the school year or to May 27, 1969.

About three (3) months after the fire, namely, on February 25, 1969, the Pickens County Board of Education held a meeting and gave its official consent to the sale of the school properties for the sum of Two Hundred One Thousand and No/100 ($201,000.00) Dollars. The Pickens County Board of Education took no further official action thereafter respecting the sale of the properties.

On March 26, 1969, Mr. James V. Patterson wrote Dr. Curtis A. Sidden, District Superintendent, in part as follows:

"It has been some time since the fire at the Calhoun Clemson Elementary School and our group feels that some consideration should be made to compensate for damage which we suffered due to the fire. Since we have not been contacted by the Board we feel that we have been damaged to the extent of some $15,000.00".

On May 27, 1969, the Trustees of the School District deeded the properties to Clemson Associates, Inc., upon payment of One Hundred Eighty-One Thousand and No/100 ($181,000.00) Dollars to the District.

Prior to said date, Clemson Associates, Inc., had contracted to sell a small corner of the properties to Hess Oil Company for Ninety Thousand and No/100 ($90,000.00) Dollars and a check of Hess Oil Company in the amount of Eighty-Five Thousand and No/100 ($85,000.00) Dollars was delivered to the School District as part of the aforesaid One Hundred Eighty-One Thousand and No/100 ($181,-000.00) Dollars payment.

At the time of the closing of the sale and before the deed was delivered, Mr. J. C. Brice, Business Manager of the School District, and Mr. W. G. Acker, Attorney for the School District, were advised by Mr. James V. Patterson that Clemson Associates, Inc., was not waiving any of its rights to claim damages resulting from the fire. Mr. Brice and Mr. Acker had no authority from the Board of Trustees of Education to act for them in the matter.

## CONCLUSIONS OF LAW

I conclude that the aforesaid School District properties were not surplus or abandoned school properties. Thus, the Trustees of School District A, with the consent of the Pickens County Board of Education had power to sell the properties. Without the prior consent of the Pickens County Board of Education, the Trustees could not sell the properties. This requirement in the statute is mandatory. The wisdom of the mandatory requirement in the statute that the prior consent of the County Board of Education must *first be obtained* for the sale of school property is made apparent by the unusual circumstance in the instant case that although the properties offered for sale had been appraised at a value of Two Hundred Thirty-Eight Thousand Seven Hundred Fifty and No/100 ($238,750.00) Dollars and the Pickens County Board of

Education on August 1, 1968, gave its consent only for the sale at a price of Two Hundred Twenty-Five Thousand and No/100 ($225,000.00) Dollars, the properties were advertised for sale at a net price of Two Hundred Thousand and No/100 ($200,000.00) Dollars. Sec. 21-238 of the 1962 Code of Laws of South Carolina reads:

*"Trustees may sell or lease school property.*—The school trustees of the several school districts may sell or lease school property, real or personal, in their school district whenever they deem it expedient to do so and apply the proceeds of any such sale or lease to the school fund of the district. The consent of the county board of education shall be first obtained by the trustees desiring to make any such sale or lease. The board of trustees, within thirty days after making any such sale or lease, shall send a report thereof to the county board of education, setting forth the terms and amount of the sale or lease. The provisions of this section shall not apply to the sale of surplus school buildings or the disposition of funds realized therefrom."

Mr. James V. Patterson and his associates, who desired to purchase the school properties, were charged with knowledge of the above provisions of law. They knew that the Trustees could only take action respecting the sale of the school properties at an official meeting attended by a majority of the Trustees. Similarly, they know that the Pickens County Board of Education could only take official action respecting the sale at an official meeting attended by a majority of the Board members. They knew or could have known by proper investigation that when their offer of Two Hundred One Thousand and No/100 ($201,000.00) Dollars for the District properties was submitted to the Trustees on September 23, 1968, the consent of the Pickens County Board of Education to accept the offer had not been obtained. Thus, the Trustees' acceptance of the offer was a nullity. They dealt with the public officials who were vested with power to sell the school

properties with notice of the extent of their powers under the above provisions of law.

In *Baker v. State Highway Department,* 166 S. C. 481, 165 S. E. 197, the Court says:

"A public officer derives his authority from statutory enactment, and all persons are in law held to have notice of the extent of his powers, and therefore, as to matters not really within the scope of his authority, they deal with the officer at their peril."

The terms of the Offer to Purchase of Mr. James V. Patterson & Associates are somewhat ambiguous and conflicting. For example, the Offer states "We hereby agree to purchase School District. A property * * * and agree to pay the sum of $201,000.00 for said property on the following terms, $20,000.00 as down payment on Contract for Sale, with balance of purchase price to be paid on June 1, 1969. * * * The said Contract for Sale shall be closed within 30 days from date of acceptance of this offer." Presumably, the language used that "The said Contract of Sale shall be closed within 30 days from the date of acceptance of this offer," intended to state that the down payment was to be made within 30 days from the acceptance of the offer. Regardless of the provisions of the offer, Eighteen Thousand and No/100 ($18,000.00) Dollars of the Twenty Thousand and No/100 ($20,000.00) Dollars was not paid to the School District until November 22, 1968, two (2) days after the fire and no writing accompanied the payment either demanding a reduction in the sales price of the properties or making claim to funds to be paid by the State Sinking Fund Commission for the fire loss.

I conclude that the earliest a Contract of Sale and Purchase between Clemson Associates, Inc., and School District A could and did come into existence was February 25, 1969, the date on which the Pickens County Board of Education gave its official consent to the sale. On that date the Pickens County Board of Education gave its official consent to sell

the then existing properties, not the properties as they existed six (6) months or so earlier. It was aware of the November fire and reduced the price in the light of the fact that the loss had ocurred and in its resolution of February 25, 1969, stated that the property authorized to be sold was that "upon which stands the remains of the school building * * *."

I further conclude that by paying Eighteen Thousand and No/100 ($18,000.00) Dollars toward the purchase price of the properties after the fire of November 20 and by paying One Hundred Eighty-One Thousand and No/100 ($181,000.00) Dollars of the purchase price on May 27, 1969, Clemson Associates, Inc., waived any right to demand back a portion of the purchase price or to demand the funds received from the State Sinking Fund Commission for the fire damage to the building.

I further conclude that Plaintiff is not entitled to recover the insurance money paid the School District as a matter of equity. The properties were appraised by an experienced and competent appraiser at Two Hundred Thirty-Eight Thousand Seven Hundred Fifty and No/100 ($238,750.00) Dollars, an amount in excess of the purchase price paid of Thirty-Seven Thousand Seven Hundred Fifty and No/100 ($37,750.00) Dollars. As an indication of the soundness of the judgment of the appraiser, the Plaintiff sold a small corner of the property for Ninety Thousand and No/100 ($90,000.00) Dollars even before the sale was closed. Significantly, after the Contract was entered into on February 25, 1969, Mr. James V. Patterson in his letter did not ask that the insurance funds be paid the Plaintiff but suggested that Fifteen Thousand and No/100 ($15,-000.00) Dollars would be a reasonable payment for the fire damage.

In my opinion, the case of *Good v. Jarrard,* 93 S. C. 229, 76 S. E. 698, has no application to the facts in the instant case. Here an offer to purchase was made on September 23, 1968, which was not accepted until February 25, 1969. The

case of *Good v. Jarrard* does not hold that when an offer is made to purchase property, the owner must insure the property for the protection of the offeror before the offer is accepted by the owner. If a portion of the properties in question and which existed on February 25, 1969, had been damaged by fire between said date and May 27, 1969, then the case of *Good v. Jarrard* would perhaps have been applicable.

For the foregoing reasons, I conclude that the Plaintiff's action herein should be dismissed with costs to it.